## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

_____

|  |  |  |
|---|---|---|
| CORINTH PIPEWORKS PIPE INDUSTRY S.A. and CPW AMERICA CO. | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Court No. 22-00063 |
| UNITED STATES, | ) ) | |
| Defendant. | ) ) | |

_____)

### COMPLAINT

Plaintiffs, Corinth Pipeworks Pipe Industry S.A. ("CPW" or "Corinth") and CPW America Inc. ("CPWA") (collectively, "Plaintiffs"), by and through their counsel, hereby allege and state as follows:

### SUMMARY AND NATURE OF THIS ACTION

1.    Plaintiff CPW is a Greek producer and exporter to the United States of large diameter welded pipe ("LDWP").  Plaintiff CPWA is the U.S. affiliate of CPW and imported the subject merchandise produced by CPW during the period of review ("POR").  Plaintiffs contest the application of total adverse facts available ("AFA") by the U.S. Department of Commerce ("Commerce") in the Final Results of the 2019-2020 antidumping administrative review of the antidumping order on LDWP from Greece.

### JURISDICTION

2.    Plaintiffs bring this action pursuant to Sections 516A(a)(2)(A)(i)(I) and 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended ("the Act"), 19 U.S.C. §§

1516a(a)(2)(A)(i)(I) and (a)(2)(B)(iii).  This action is an appeal of Commerce's *Final Results* in the April 19, 2019 – April 30, 2020 administrative review of the antidumping duty order on LDWP from Greece.   *Large Diameter Welded Pipe From Greece: Final Results of Antidumping Duty Administrative Review; 2019-2020*, 87 Fed. Reg. 7120 (Dep't Commerce Feb. 8, 2022) ("*Final Results*"), and accompanying Decision Memorandum for the Final Results of the 2019-2020 Administrative Review of the Antidumping Duty Order on Large Diameter Welded Carbon and Alloy Steel Line Pipe from Greece (February 2, 2022) ("*Final Results IDM*").

3.      This Court has jurisdiction by reason of 28 U.S.C. § 1581(c).

## STANDING

4.      Plaintiff CPW is a producer and exporter of LDWP from Greece.

5.      Plaintiff CPWA is an importer of LDWP from Greece through which CPW made sales during the period of review.

6.      Plaintiffs were parties to the 2019-2020 administrative review conducted by Commerce and participated in the administrative review by supplying questionnaire responses, filing briefs, and attending Commerce's public hearing.  Therefore, Plaintiffs are interested parties pursuant to 19 U.S.C. § 1516a(f)(3) and 19 U.S.C. § 1677(9)(A).  As interested parties that actively participated in the proceeding below, Plaintiffs have standing to commence this action under 19 U.S.C. § 1516a(a)(2)(A), 19 U.S.C. § 1516a(d), 28 U.S.C. § 2631(c), and 28 U.S.C. § 1581(c).

## TIMELINESS OF THIS ACTION

7.      On  February 8, 2022, Commerce published in the *Federal Register* the challenged *Final Results*.   *Large Diameter Welded Pipe From Greece: Final Results of Antidumping Duty Administrative Review; 2019-2020*, 87 Fed. Reg. 7120 (Dep't Commerce Feb. 8, 2022).  Plaintiffs

filed a summons initiating this appeal on March 4, 2022, pursuant to Sections 516A(a)(2)(A)(i)(I) and 516A(a)(2)(B)(iii) of the Act, 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and (a)(2)(B)(iii), which was within thirty (30) days of publication of the *Final Results* in the *Federal Register*.  This action was therefore timely filed pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(I) of the Act, 28 U.S.C. § 2636(c), and U.S. Court of International Trade Rule 3.  This complaint is being filed on March 31, 2022, which is within 30 days of the filing of the summons and is thus timely filed under Court of International Trade Rule 3(a)(2).

## STATEMENT OF FACTS

8.  On May 2, 2019, Commerce published an antidumping order regarding welded line pipe from Greece.  *Large Diameter Welded Pipe From Greece: Amended Final Affirmative Antidumping Determination and Antidumping Duty Order*, 84 Fed. Reg. 18,769 (Dep't Commerce May 2, 2019).  The estimated weighted-average dumping margin calculated for CPW in the original investigation was 10.26 percent.  *Id*.

9.  On July 10, 2020, Commerce initiated the first administrative review of the antidumping duty order on large diameter welded pipe from Greece.  *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 85 Fed. Reg. 41540 (Dep't Commerce July 10, 2020).  Commerce's period of review for this administrative review of the order on LDWP from Greece is April 19, 2019 – April 30, 2020.

10.  On July 17, 2020, Commerce issued its antidumping questionnaire to CPW and established deadlines for responses to Sections A, B, C and D of the questionnaire.  The response to Section A was due by August 7, 2020, and the responses to Sections B, C, and D were collectively due by August 24, 2020.

11.    On July 21, 2020, Commerce placed a memorandum on the record of this review concerning the decision to toll the statutory deadlines for all preliminary and final results in administrative reviews pending as of the date of the memorandum – including the review at issue. *Memorandum To The Record From Jeffrey I. Kessler, Assistant Secretary for Enforcement and Compliance regarding Tolling of Deadlines For Antidumping and Countervailing Duty Administrative Reviews* (July 21, 2020).  Based on "{o}perational considerations due to COVID-19", Commerce tolled the statutory deadlines for pending reviews by a total of 60 days.

12.    CPW submitted its responses to Section A on August 16, 2020 and its responses to Sections B, C and D on September 21, 2020.  All of these responses were timely submitted.

13.    In its response to the initial Section D questionnaire, CPW described its project-based cost accounting system and provided the supporting reconciliations and cost calculations. CPW also explained that the costs reported in its Section D cost database were downloaded directly from the company's SAP cost module. Specifically, CPW relied on the SAP report ZWHB_VER_ROLLUP ("SAP ROLLUP Report") which calculates and presents the product-specific cost of production for all finished or semifinished goods (*e.g.*, bare pipe sold without coating or lining) in a given project.  The cost of production available in the SAP ROLLUP Report represents a consolidated cost of production that eliminates any double-counting or triple-counting as the product moves through the different stages of production.

14.    CPW demonstrated in Exhibit D-10 of its Section D response how in the normal course of business its cost accounting system calculates a fully loaded cost of production at each stage of production – bare pipe production, coating, and lining – and, consequently, simply summing the costs for a finished product would result in double or triple counting the cost of production, depending on the number of processes performed.  The SAP ROLLUP Report

eliminates any duplicated production costs carried forward from stage to stage, thereby resulting in a consolidated cost of production for the final product.

15.      During the original investigation, Commerce reviewed and verified CPW's SAP system, including the SAP ROLLUP Report, during its onsite verification in Greece.  CPW placed on the record of this administrative review the C*ost Verification Report* (October 26, 2018) prepared by Commerce in the original investigation.

16.      On October 19, 2020, the U.S. industry that filed the original antidumping petition against Greece and several other countries (hereinafter "Petitioners") requested that Commerce conduct verification of CPW, the sole mandatory respondent in the first review of the order on LDWP from Greece.  *Letter on behalf of Petitioners regarding Large Diameter Welded Pipe from Greece: Request for Verification* (October 19, 2020).  However, Commerce did not conduct verification of CPW nor did it issue a letter-in-lieu-of-verification during the course of the first review.

17.      On February 10, 2021, Commerce issued its first supplemental questionnaire to CPW regarding Sections A, B, and C.  CPW requested and received extensions of time for its responses to this questionnaire due to the impact of COVID on operations in Greece and the impact of severe overlapping snowstorms in Athens, Greece and Houston, Texas.  CPW timely submitted its responses to the Supplemental A—C questionnaire on March 12, 2021.

18.      On March 10, 2021, Commerce announced that it was extending the date of the *Preliminary Results* of the first review of the order on LDWP from Greece.  *Memorandum from Paul J. Litwin, International Trade Compliance Analyst, AD/CVD Operations, Office II regarding Large Diameter Welded Pipe from Greece: Extension of Time Limit for Preliminary Results of*

*2019-2020 Antidumping Duty Administrative Review* (March 10, 2021).  The deadline for the *Preliminary Results* was extended by 120 days, from April 1, 2021 to July 30, 2021.

19.    On May 25, 2021, Commerce issued its second supplemental questionnaire to CPW regarding Sections A, B, and C.  CPW requested and received an extension of time for its responses to this questionnaire due to the COVID quarantine restrictions in place at CPW in Greece. CPW timely submitted its responses to the Second Supplemental A—C questionnaire on June 15, 2021.

20.    Eight months after CPW's submission of its initial Section D response, Commerce issued its first Supplemental Section D questionnaire to CPW on May 27, 2021.

21.    The First Supplemental Section D questionnaire asked CPW to provide, *inter alia*, additional information about its accounting system and reconciliation worksheet, confirmation of certain reported costs, revised inventory movement schedules, new information about financial statements from affiliated parties, additional explanation of scrap valuation, and further elaboration of its reporting of "non-prime items".

22.    The revised cost buildup packages which CPW submitted at Exhibits (Supp D)-12, (Supp D)-13 and (Supp D)-14 included the complete SAP ROLLUP Report for 2019 and 2020 as well as a reconciliation worksheet illustrating how the production costs recorded in the SAP ROLLUP Reports tie back to the financial accounting system.  The SAP ROLLUP Report is generated directly from the SAP system.  During the original investigation, Commerce reviewed and verified the SAP ROLLUP report and warehouse book for the investigation period (along with other supporting documentation) – as shown in Commerce's *Cost Verification Report* (October 26, 2018) submitted on the record of this administrative review.

23.     CPW requested and received extensions of time for its responses to this questionnaire due to the COVID quarantine restrictions in place at CPW. Specifically, CPW explained that there was a confirmed case of COVID-19 in the company's Finance Department and that two key officials involved in the review – the Head of the Financial Planning & Reporting Department and the Head of the Accounting, Treasury and Expediting Department – were quarantined and would have to undergo testing before being permitted back into the office. Regardless, CPW timely submitted its responses to the Supplemental Section D questionnaire in two parts on June 22, 2021 and June 25, 2021.

24.     On July 9, 2021, Petitioners filed pre-preliminary comments, arguing that Commerce should apply total adverse facts available ("AFA") to CPW in the *Preliminary Results*. CPW filed a response to Petitioners' comments on July 16, 2021.

25.     On Friday, July 15, 2021, Commerce issued its second supplemental D questionnaire to CPW with initial responses due by Tuesday, July 19 and the remaining responses due by Friday, July 22.

26.     CPW timely submitted its responses to the Second Supplemental D questionnaire on July 22, 2021.  Specifically, CPW provided an annotated "road map" for its reconciliation and cost build-up worksheets and demonstrated how particular cost items and CONNUM costs tied to the Excel sheet "dnld SAP" sheet.

27.     In response to the Second Supplemental D Questionnaire, CPW submitted extensive explanations along with supporting documentation detailing how the SAP ROLLUP Report and the two other SAP reports – DB SAP R3 monthly and SAP dnld yearly – were used to present the reported cost of production to (1) reconcile to the same pool of production costs and (2) reconcile to the reported production costs calculated for the merchandise under consideration.

CPW also explained how the cost information extracted from SAP reconciles to the most recently audited financial statement and the submitted cost of production for the merchandise under consideration.

28.      On August 6, 2021, Commerce published the *Preliminary Results* in the *Federal Register*. *Large Diameter Welded Pipe From Greece: Preliminary Results of Antidumping Duty Administrative Review; 2019-2020*, 86 Fed. Reg. 43172 (Dep't Commerce Aug. 6, 2021) ("*Preliminary Results*"), and accompanying Decision Memorandum (July 30, 2021).  Commerce also issued its preliminary calculation memorandum in which Commerce indicated that it had relied on the home market (HM) sales database, U.S. sales database, and cost of production (COP) databases that CPW had submitted.  *Memorandum to The File from Paul Litwin, International Trade Compliance Analyst, Office II, AD/CVD Operations regarding Antidumping Duty Administrative Review of Large Diameter Welded Pipe from Greece: Calculations for Corinth Pipeworks Pipe Industry S.A. for the Preliminary Results* (July 30, 2021).

29.      In the *Preliminary Results*, Commerce calculated a zero percent estimated weighted-average dumping margin for CPW based on CPW's reported sales and cost data.

30.      Commerce neither requested nor accepted any new or additional sales or cost data from CPW after the *Preliminary Results*.

31.      Despite Petitioners' request, Commerce did not conduct verification nor did it issue a letter-in-lieu-of-verification during the first review.

32.      On September 14, 2021, CPW and Petitioners submitted their case briefs to Commerce.  CPW agreed with Commerce's *Preliminary Results*.

33.      On September 28, 2021, CPW submitted its rebuttal brief, disputing Petitioners' claims that CPW's cost data were incomplete and unreliable.

34.     On October 26, 2021, CPW and Petitioners participated in Commerce's public hearing.  Commerce asked no questions and requested no further explanation or information from CPW.

35.     On November 19, 2021, Commerce announced that it was extending the date of the final results of the first review of the order on LDWP from Greece.  *Memorandum from Paul J. Litwin, International Trade Compliance Analyst, AD/CVD Operations, Office II regarding Large Diameter Welded Pipe from Greece: Extension of Deadline for Final Results of 2019-2020 Antidumping Duty Administrative Review* (November 19, 2021).  The deadline for the final results was extended from December 6, 2021 to February 2, 2022.

36.     On January 26, 2022, one week before the scheduled deadline for the *Final Results*, Commerce placed on the record the final margin calculation memorandum from the original investigation of LDWP from Greece.  *Memorandum to The File from Jacob Garten, Analyst, AD/CVD Operations, Office II regarding Large Diameter Welded Line Pipe from Greece; 2019-2020 Antidumping Administrative Review: Placing New Factual Information on the Record* (January 26, 2022).  This 294-page document contains an explanation of Commerce's final determination in the original investigation, a copy of the margin program, and a print-out of the margin program results.  Commerce offered no explanation for the placement of this information on the record of the first administrative review nor did it request comments with respect to any aspect of the memorandum.

37.     On January 31, 2022, in accordance with Commerce's regulations regarding new factual information, CPW placed on the record of the first review the cost and sales verifications reports that Commerce had issued in the original investigation. CPW pointed out that these verification reports showed that "Commerce fully verified and accepted CPW's data and reporting

methodology – the same methodologies that CPW has used in the current administrative review." *Letter to Sec'y of Commerce from Vorys Sater Seymour and Pease LLP, regarding Large Diameter Welded Pipe from Greece: Factual Information To Rebut, Clarify, or Correct New Factual Information Placed on the Record* (January 31, 2022).

38.     On February 3, 2022, Commerce notified CPW about the *Final Results* of the first administrative review: an AFA margin of 41.04 percent ("the petition rate") replacing the previous deposit rate of 10.26 percent. Commerce also provided CPW with the final cost calculation memorandum. *Memorandum from Office of Accounting regarding Large Diameter Welded Pipe from Greece: Cost of Production and Constructed Value Calculation Adjustments for the Final Results – Corinth Pipeworks Pipe Industry S.A.* (February 2, 2022) ("*Cost Calculation Memorandum*"). The *Cost Calculation Memorandum* included reconciliation worksheets prepared by the Office of Accounting alleging unreconciled differences between CPW's cost reports and CPW's COP/CV File.

39.     Commerce's final cost calculations contained significant errors that resulted in Commerce deducting actual production costs from CPW's reported costs whereby Commerce created an unreconciled difference in the cost reconciliation where none existed. Commerce also reached the erroneous conclusion that CPW's costs were double-counted, despite the fact that the SAP ROLLUP Report – upon which CPW relied to report its costs – eliminates any double-counting as the pipe passes through the production stages of bare pipe, lining, and coating.

40. The SAP ROLLUP Report is the same report that Commerce reviewed and verified during the original investigation – as shown in Commerce's *Cost Verification Report* (October 26, 2018).

41.     On February 8, 2022, Commerce published the *Final Results* in the *Federal Register*.   *Large Diameter Welded Pipe From Greece: Final Results of Antidumping Duty Administrative Review: 2019-2020*, 87 Fed. Reg. 7120 (Dep't Commerce Feb 8, 2022), and accompanying *Decision Memorandum* for the Final Results of the 2019-2020 Administrative Review of the Antidumping Duty Order on Large Diameter Welded Carbon and Alloy Steel Line Pipe from Greece (February 2, 2022) ("*Final Results IDM*").

42.     In the *Final Results IDM*, Commerce indicated that after initially relying on CPW's cost data for the *Preliminary Results*, it rejected the same cost data for the *Final Results* alleging that CPW failed to provide the cost reconciliation "in the form and manner requested", "significantly impeded the proceeding", and provided information that was "too incomplete to serve as a reliable basis for reaching a determination."   Commerce gave no indication in its *Preliminary Results* that the cost data submitted by CPW and on which Commerce relied for its preliminary margin calculation were not sufficient for the *Final Results* as well.

43.     Also in the *Final Results IDM*, Commerce stated that CPW failed to cooperate by not acting to the best of its ability and that this justified the application of an adverse inference when selecting from the facts available even though there was no indication in the *Preliminary Results* that such a result was being considered for the *Final Results*.   For its *Preliminary Results*, Commerce accepted CPW's submitted cost and sales data to calculate a zero margin – never indicating that there was any impediment to using CPW's data for its dumping analysis and calculation.

44.     Commerce also indicated in the *Final Results IDM* that it had reviewed the individual transactions margins in the final calculation memorandum from the original investigation – which Commerce had placed on the record of the first review one week before the

*Final Results* – to corroborate the AFA margin of 41.04 percent. CPW never had the opportunity to challenge Commerce's corroboration analysis, as Commerce placed the final calculation memorandum from the original investigation on the record of the administrative review without any further explanation or specific instruction.

45.     On February 9, 2022, CPW submitted ministerial error comments regarding Commerce's *Final Results* and more specifically the *Cost Calculation Memorandum* from the Office of Accounting. *Letter to Sec'y Commerce from Vorys Sater Seymour and Pease LLP regarding Administrative Review of Large Diameter Welded Pipe from Greece – Comments Regarding Significant Ministerial Error in Final Results* (February 9, 2022).

46.     On March 3, 2022, Commerce rejected CPW's ministerial error allegation.

### STATEMENT OF CLAIMS

### Count 1

47.     Paragraphs 1 to 46 are incorporated by reference.

48.     Commerce accepted and relied on CPW's reported costs for purposes of reaching the *Preliminary Results* in the first review of the order on LDWP from Greece. Based on CPW's reported data, Commerce calculated a weighted-average dumping margin of zero in the *Preliminary Results*.

49.   CPW's data were entirely unchanged from the preliminary to the final given that (a) no new data were requested or submitted after the *Preliminary Results* and (b) Commerce did not conduct an onsite, virtual or other verification of CPW's data which might have resulted in revisions to the data.

50.  For the *Final Results*, Commerce rejected CPW's cost data and imposed a punitive margin of 41.04 percent, even though the submitted data were complete, reliable and could be verified.

51.  Commerce's rejection of CPW's previously-accepted data for the *Final Results* was unsupported by substantial evidence and not in accordance with law.

## Count 2

52.  Paragraphs 1 to 51 are incorporated by reference.

53.  CPW fully participated in the administrative review and complied with Commerce's requests for information, even during the worst of the COVID pandemic crisis. CPW provided timely and complete responses to Commerce's initial and supplemental questionnaires.

54.  Despite CPW's record of cooperation and responsiveness in the administrative review, Commerce applied adverse facts available (AFA), claiming that CPW failed to provide the cost reconciliation in "the form and manner requested".  However, CPW submitted extensive reconciliation worksheets, explanations, and supporting documentation which, *inter alia*, (a) detailed how the SAP ROLLUP Report and two other SAP reports (DB SAP R3 monthly and SAP dnld yearly) were used to present the reported cost of production and (b) demonstrated that its costs were fully reported and supported by CPW's records.  In addition, CPW provided detailed worksheets illustrating how the cost information extracted from its SAP system reconciled to its most recently audited financial statement and to the submitted cost of production for the merchandise under consideration.

55.  Commerce's application of adverse facts available (AFA) to CPW was unsupported by substantial evidence and not in accordance with law.

**Count 3**

56.    Paragraphs 1 to 55 are incorporated by reference.

57.    Commerce's cost verification report in the original investigation showed that verification enabled Commerce to confirm the reconciliation of CPW's cost data with its financial statements.  However, Commerce did not conduct a verification in the administrative review despite the request to do so from Petitioners.

58.    Commerce's failure to conduct a verification (on-site, virtual or otherwise) deprived itself and CPW of an opportunity to confirm that CPW's reported costs reconciled to its financial statements as demonstrated by CPW in its response to Commerce's questionnaires.

59.    Commerce's failure to conduct a verification was an abuse of discretion and resulted in *Final Results* that are unsupported by substantial evidence and contrary to law.

**Count 4**

60.    Paragraphs 1 to 59 are incorporated by reference.

61.    Commerce released its Final Cost Calculations after the *Final Results* were issued. In its cost calculations, Commerce cited to unsupported data compilations and incorrect conclusions to reach its decision.

62.    Specifically, Commerce deducted actual production costs from CPW's reported costs creating an unreconciled difference in the cost reconciliation where none existed. Additionally, Commerce erroneously concluded that CPW's costs were double-counted, despite the fact that CPW explained that the SAP ROLLUP Report eliminates any double-counting as the pipe passes through the production stages of bare pipe, lining, and coating.

63.    During the original investigation, Commerce reviewed, verified, and accepted CPW's use of the SAP ROLLUP Report – as shown in Commerce's *Cost Verification Report* (October 26, 2018). Commerce's rejection of CPW's use of the same methodology and source documents in the first review is contradictory and inconsistent with its own findings in the original investigation.

64.    Commerce's erroneous final cost calculations were unsupported by substantial evidence and not in accordance with law.

**Count 5**

65.    Paragraphs 1 to 64 are incorporated by reference.

66.    During the interval between its *Preliminary* and *Final Results*, Commerce did not request any further information from CPW, nor did it conduct verification of CPW's submitted data. Thus, the record evidence with regard to CPW's cost and sales data were unchanged from the Preliminary to the Final Results. Despite calculating a zero margin based on CPW's submitted data in its *Preliminary Results*, Commerce inexplicably issued a final AFA margin in the *Final Results* based on the same data.

67.    CPW had no notice of the radical change in Commerce's treatment of CPW's cost data, which – again – had been the basis for Commerce's calculation of a zero dumping margin in the *Preliminary Results*. As a result, Commerce deprived CPW of the opportunity to comment during the normal briefing and hearing schedule or to address the clear errors in Commerce's *Cost Calculation Memorandum*. Commerce also declined to conduct a verification – whether on-site, virtually, or via a letter-in-lieu-of-verification – to address the issues raised by Commerce in the *Final Results*.

15

68.     Commerce's failure to articulate a valid basis for departing from its preliminary decision and refusal to give CPW the opportunity to address the alleged deficiencies cited for the first time in the *Final Results* was unsupported by substantial evidence and not in accordance with law.

### Count 6

69.     Paragraphs 1 to 68 are incorporated by reference.

70.     The record does not support the application of a punitive dumping margin of 41.04 percent.

71.     Commerce conducted a flawed analysis in selecting and corroborating an AFA margin, and CPW was deprived of any opportunity to challenge or even comment on the selection of the 41.04 percent margin.

72.     Specifically, Commerce first announced the 41.04 percent margin in its *Final Results* without any notice that it was considering the application of AFA to CPW.  As a result, CPW was not permitted to comment on the selection of the punitive AFA margin in question or to otherwise challenge Commerce's application of AFA.

73.     Commerce's selection of a punitive AFA margin and its denial of an opportunity for CPW to comment on or challenge that decision resulted in *Final Results* which were unsupported by substantial evidence and not in accordance with law.

<u>**DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiffs respectfully request that this Court:

(1)    Hold that Commerce's *Final Results* in the 2019–2020 administrative review of the antidumping order on large diameter welded pipe from Greece are unsupported by substantial evidence and otherwise not in accordance with law and reverse the application of total adverse facts available;

(2)    Remand this case to Commerce for re-determination consistent with the judgment and findings of this Court; and

(3)    Grant such other relief as the Court shall deem just and proper.

Respectfully submitted,

/s/ Frederick P. Waite

Frederick P. Waite
Kimberly R. Young
**VORYS SATER SEYMOUR AND PEASE LLP**
1909 K Street, N.W.
Washington, D.C. 20006
(202) 216-4817

Dated: March 31, 2022

*Counsel to*
*Corinth Pipeworks Pipe Industry S.A.*
*and CPW America Co.*