**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

CORINTH PIPEWORKS PIPE INDUSTRY S.A.
AND CPW AMERICA CO.,

               **Plaintiffs,**

      v.

UNITED STATES,

               **Defendant,**

     and

THE AMERICAN LINE PIPE PRODUCERS
ASSOCIATION TRADE COMMITTEE,

               **Defendant-Intervenor.**

Before:  Hon. Leo M. Gordon,
          Senior Judge

Court No. 22-00063

**<u>DEFENDANT-INTERVENOR THE AMERICAN LINE PIPE PRODUCERS
ASSOCIATION TRADE COMMITTEE'S RESPONSE BRIEF</u>**

Timothy C. Brightbill, Esq.
Laura El-Sabaawi, Esq.

WILEY REIN LLP
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to the American Line Pipe
Producers Association Trade Committee*

Dated: January 20, 2023

Ct. No. 22-00063

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     RULE 56.2 STATEMENT ................................................................................ 1

III.    ARGUMENT ..................................................................................................... 2

    A.    Commerce's Decision to Apply Facts Available with an Adverse
          Inference Was Supported by Substantial Evidence and Consistent
          with Law, Including with 19 U.S.C. § 1677m(g) ..................................... 2

    B.    Commerce's Decision to Apply Adverse Facts Available Was
          Supported by Substantial Evidence and Consistent with Law,
          Including with 19 U.S.C. § 1677e ............................................................ 8

    C.    Commerce's Determination to Apply Total AFA Was Warranted ....................... 12

IV.     CONCLUSION ................................................................................................ 15

Ct. No. 22-00063

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ad Hoc Shrimp Trade Action Comm. v. United States,*
    802 F.3d 1339 (Fed. Cir. 2015)...................................................................................15

*Deacero S.A.P.I. de C.V. v. United States,*
    353 F. Supp. 3d 1303 (Ct. Int'l Trade 2018) ............................................................4

*Diamond Sawblades Manufacturers' Coal. v. United States,*
    Ct. No. 17-00167, slip op. 18-146 (Ct. Int'l Trade Oct. 23, 2018)........................13

*Essar Steel Ltd. v. United States,*
    678 F.3d 1268 (Fed. Cir. 2012)...................................................................................3

*Fresh Garlic Producers Ass'n v. United States,*
    121 F. Supp. 3d 1313 (Ct. Int'l Trade 2015) ............................................................5

*Mukand, Ltd. v. United States,*
    767 F.3d 1300 (Fed. Cir. 2014)................................................................................13

*Nippon Steel Corp. v. United States,*
    337 F.3d 1373 (Fed. Cir. 2003)................................................................................12

*Papierfabrik August Koehler SE v. United States,*
    843 F.3d 1373 (Fed. Cir. 2016)................................................................................15

*Peer Bearing Co. v. United States,*
    22 CIT 472, 12 F. Supp. 2d 445 (1998) .....................................................................4

*PT Kenertec Power Sys. v. United States,*
    Consol. Ct. No. 20-03687, slip op. 21-175 (Ct. Int'l Trade Dec. 28, 2021)............4

*Ta Chen Stainless Steel Pipe Co. v. United States,*
    31 CIT 794 (2007) ...................................................................................................13

*U.S. Steel Corp. v. United States,*
    34 CIT 252, 712 F. Supp. 2d. 1330 (2010) ............................................................5, 6

**Statutes**

19 U.S.C. § 1677e ...........................................................................................................8

19 U.S.C. § 1677e(b)(2)................................................................................................14

Ct. No. 22-00063

19 U.S.C. § 1677m(g) ....................................................................................................3, 4

**Administrative Materials**

Issues and Decision Memorandum for the Final Determination of the
    Investigation of Prestressed Concrete Steel Wire Strand from Mexico
    (Dep't of Commerce Dec. 8, 2003) available at
    https://access.trade.gov/Resources/frn/summary/mexico/03-30384-1.pdf
    (last visited on Jan. 20, 2023) ....................................................................................13

*Large Diameter Welded Pipe From Greece*,
    84 Fed. Reg. 18,769 (Dep't of Commerce May 2, 2019) ..........................................14

**Other Authorities**

Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Doc.
    No. 103-316, vol. 1 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040 ...................................3, 14

Ct. No. 22-00063

## I.   **INTRODUCTION**

On behalf of the American Line Pipe Producers Association Trade Committee ("ALPPA Trade Committee" or "Defendant-Intervenor"), we respectfully submit the following response to the September 16, 2022 motion for judgment on the agency record and opening brief filed by Plaintiffs Corinth Pipeworks Pipe Industry S.A. and CPW America Co. ("Plaintiffs" or "CPW"). Mem. of P. & A. in Supp. of Pls.' Mot. for J. on the Agency R. Pursuant to Rule 56.2 (Sept. 16, 2022), ECF No. 28 ("CPW Br."). The ALPPA Trade Committee agrees with and incorporates by reference the arguments in the January 6, 2023 response brief of Defendant United States ("Defendant"). Def.'s Resp. to Pls.' Mot. for J. on the Admin. R. (Jan. 6, 2023), ECF No. 32 ("Def. Br."). For the reasons discussed below and in the brief of Defendant United States, Plaintiffs' motion should be denied, and judgment should enter for Defendant United States.

## II.   **RULE 56.2 STATEMENT**

CPW challenges the U.S. Department of Commerce's ("Commerce") final results in the first administrative review of the antidumping duty order on large diameter welded pipe ("LDWP") from Greece. *See Large Diameter Welded Pipe from Greece*, 87 Fed. Reg. 7,120 (Dep't of Commerce Feb. 8, 2022) ("Final Results") and accompanying Issues and Decision Memorandum. Decision Memorandum for the Final Results of the 2019-2020 Administrative Review of the Antidumping Duty Order on Large Diameter Welded Carbon and Alloy Steel Line Pipe from Greece (Dep't of Commerce Feb. 2, 2022) ("Decision Memorandum").[1] Specifically, CPW challenges:

---

[1]     ALPPA Trade Committee has endeavored to follow the Court's citation instructions in its Rule 56.2 notice and scheduling order (ECF No. 22). However, Commerce has not published the Decision Memorandum at a separate web link, so it is only accessible by navigating to ACCESS and downloading a PDF of the memorandum.

Ct. No. 22-00063

1.      Whether Commerce's determination to apply facts available with an adverse inference ("AFA") was supported by substantial evidence and satisfied the requirements of 19 U.S.C. § 1677m(g), including because the determination was made for the first time in the final results;

2.      Whether Commerce's determination to reject CPW's cost data and apply AFA was supported by substantial evidence and consistent with law; and

3.      Whether Commerce appropriately found that CPW's 2019 cost data was unusable; and

4.      Whether Commerce appropriately applied total AFA, including whether the rate selected was appropriate.

## III.   <u>ARGUMENT</u>

### A.   <u>Commerce's Decision to Apply Facts Available with an Adverse Inference Was Supported by Substantial Evidence and Consistent with Law, Including with 19 U.S.C. § 1677m(g)</u>

Commerce's decision to apply AFA to CPW for failure to provide a complete, reliable and accurate cost reconciliation was supported by substantial evidence and consistent with law. CPW's submission of severely deficient cost data constituted a withholding of information that was requested by the agency, a failure to provide information in the form and manner requested, and the provision of information that could not be verified, and it significantly impeded the agency's proceeding.  By repeatedly reporting such flawed and unusable data, CPW also failed to cooperate with the review by not acting to the best of its ability to comply with a request for information.  As such, the application of AFA was supported by substantial evidence, consistent with 19 U.S.C. § 1677e and otherwise lawful.

Ct. No. 22-00063

The ALPPA Trade Committee incorporates by reference the legal standard for the application of AFA as outlined in Defendant's brief. *See* Def. Br. at 4-5. Defendant-Intervenor adds that, because Commerce lacks subpoena power over foreign respondents, *Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1276 (Fed. Cir. 2012), the ability to utilize the facts available provisions and apply adverse inferences is critical to the agency's effective administration of the AD/CVD laws. *See, e.g.*, Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Doc. No. 103-316, vol. 1, at 868 (1994) ("SAA"), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4199 (describing the facts available rules as "an essential investigative tool in {AD/CVD} proceedings"). As the U.S. Court of Appeals for the Federal Circuit ("CAFC") has explained, "{w}ithout the ability to enforce full compliance with its questions, Commerce runs the risk of gamesmanship and lack of finality in its investigations." *Essar Steel*, 678 F.3d at 1276.

CPW first argues that Commerce's application of AFA to determine its dumping margin in the Final Results was inconsistent with 19 U.S.C. § 1677m(g). CPW Br. at 8-13. 19 U.S.C. § 1677m(g) states:

> <u>Information that is submitted on a timely basis to the administering authority</u>… during the course of a proceeding under this subtitle shall be subject to comment by other parties to the proceeding within such reasonable time as the administering authority . . . shall provide. The administering authority . . ., before making a final determination . . . shall cease collecting information and shall provide the parties with a final opportunity to comment <u>on the information obtained by the administering authority</u> . . . upon which the parties have not previously had an opportunity to comment.

(emphasis added). The plain language of this statutory section thus makes clear that it provides for the opportunity to comment on <u>new factual information submitted by interested parties</u> to Commerce during the course of a proceeding. *See id.* CPW does not allege that there was any new factual information submitted to the record after the preliminary determination on which it was not permitted the opportunity to comment. *See* CPW Br. at 8-13. Indeed, there was none.

3

Ct. No. 22-00063

19 U.S.C. § 1677m(g) does <u>not</u> require Commerce to provide parties with an opportunity to comment on any changes in its decision-making or changes to calculated dumping margins. CPW's proffered arguments to the contrary would effectively prohibit Commerce from making <u>any</u> changes from the preliminary determination to the final determination, without allowing the parties to submit post-final determination arguments, which are not contemplated by the statute or permitted by Commerce's regulations or practice.

As Defendant explains, it is well-established that Commerce may change its decisions between the preliminary results and the final results. In addition to the relevant case law cited by Defendant, *see* Def. Br. at 17-18, this Court explained in *Peer Bearing Co. v. United States* that "Commerce is allowed flexibility to change its position from the preliminary determination to the Final Results, as along as Commerce explains the basis for the change and the explanation is supported by substantial evidence. Preliminary results, by their very nature, are preliminary and subject to change." 22 CIT 472, 481-482, 12 F. Supp. 2d 445, 456 (1998). Defendant-Intervenor notes another recent case where this Court upheld a significant change between Commerce's preliminary and final determinations – a change which ultimately resulted in the difference between an affirmative preliminary determination and a negative final determination (after remand). In *PT Kenertec Power System v. United States*, the Court affirmed Commerce's change in position from its preliminary determination and the ultimately negative final determination, "following further investigation" and after it "amended its preliminary understanding" of the relevant issue. *PT Kenertec Power Sys. v. United States*, Consol. Ct. No. 20-03687, slip op. 21-175 at 10, 14 (Ct. Int'l Trade Dec. 28, 2021). And the Court has sustained Commerce's decision to apply AFA to a respondent for the first time in the final results (with no post-preliminary decision issued) on numerous occasions. *See, e.g., Deacero S.A.P.I. de C.V. v. United States*, 353

Ct. No. 22-00063

F. Supp. 3d 1303 (Ct. Int'l Trade 2018); *Fresh Garlic Producers Ass'n v. United States*, 121 F. Supp. 3d 1313 (Ct. Int'l Trade 2015).

The ALPPA Trade Committee further agrees with the Defendant's analysis as to why the case law cited by CPW is inapposite. *See* Def. Br. at 18-20; CPW Br. at 9-12. We add that *U.S. Steel Corp. v. United States* also does not support CPW's contention that Commerce should have issued a post-preliminary decision applying AFA and provided CPW with an opportunity to comment on it. *See* CPW Br. at 11; *U.S. Steel Corp. v. United States*, 34 CIT 252, 712 F. Supp. 2d. 1330 (2010). To the contrary, CPW's citation of the case is inaccurate and misleading. In *U.S. Steel*, the plaintiff challenged Commerce's method for calculating indirect selling expenses in an antidumping duty administrative review, arguing that Commerce improperly changed its methodology between the preliminary and final results of the review. *U.S. Steel*, 34 CIT at 280, 712 F. Supp. 2d at 1354. Contrary to CPW's implication, the Court in *U.S. Steel* held that Commerce was permitted to change its decision between the preliminary results and final results. *Id.*, 34 CIT at 281, 712 F. Supp. 2d at 1355 ("It has long been recognized that Commerce is not bound by the positions taken or the methodologies employed in its preliminary determinations"). In its decision, the Court cited the defendant-intervenor's statement that "the whole purpose of the {post-Preliminary Results} briefing process is to permit parties an opportunity to address aspects of Commerce's preliminary calculation methodology and attempt to convince Commerce to make appropriate revisions in the final decision," which CPW quotes in its brief. *Id.*; CPW Br. at 11. CPW implies that the Court was referring to a briefing process after issuance of a post-preliminary decision by Commerce. *See* CPW Br. at 11. In actuality, the Court appears to be referring to the typical case and rebuttal briefing process, which occurs after ("post") the preliminary results, not briefing after a separate, post-preliminary decision. *See U.S. Steel*, 34 CIT at 281, 712 F. Supp.

Ct. No. 22-00063

2d at 1355.  In fact, there is no indication that Commerce even issued a post-preliminary decision in the review underlying the *U.S. Steel* appeal, rendering CPW's citation to the case irrelevant. *See generally id.*

In fact, far from supporting CPW's contention that a post-preliminary decision was required in this review, the Court in *U.S. Steel* upheld Commerce's change in methodology based on facts quite similar to the facts in the instant appeal.  The Court explained in *U.S. Steel*:

> In this case, as U.S. Steel emphasizes, Commerce had the requisite documentation in hand before the Preliminary Results issued.  Nevertheless, because Commerce had not yet had an opportunity to digest that information or to carefully analyze POSCO's proposed payroll methodology, the agency relied on its default methodology — the relative sales value methodology — for purposes of the Preliminary Results.  After the Preliminary Results were released, Commerce reviewed POSCO's proposal more carefully, and considered it in light of the parties' briefing.  As the Government explains, "after analyzing POSCO's explanation of the methodology in its case brief and after reviewing the evidence from the original and supplemental questionnaires, Commerce was satisfied that POSCO's methodology was accurate for the Final Results."  U.S. Steel's objections to Commerce's change of methodology must therefore be rejected.

*U.S. Steel*, 34 CIT at 281-282, 712 F. Supp. 2d at 1355-1356 (internal citations omitted).  Similarly, in the review underlying this appeal, Commerce had CPW's deficient cost reporting in hand prior to the preliminary results.  *See* Decision Memorandum for the Preliminary Results of the 2019-2020 Administrative Review of the Antidumping Duty Order on Large Diameter Welded Pipe from Greece (Dep't of Commerce July 30, 2022), available at https://access.trade.gov/Resources/frn/summary/greece/2021-16834-1.pdf (last visited on January 20, 2023) at 2, 12 ("Prelim. Decision Memorandum").  However, because CPW's second supplemental questionnaire response with regard to deficiencies in its cost reporting had been received shortly prior to the preliminary results, and thus "Commerce had not yet had an opportunity to digest that information or to carefully analyze" it, Commerce explained that it would consider that response for purposes of the final results.  *U.S. Steel*, 34 CIT at 281, 712 F. Supp. 2d

Ct. No. 22-00063

at 1355; Prelim. Decision Memorandum at 2. Then, as in *U.S. Steel*, after further analysis and review of the evidence from the original and supplemental questionnaires, including the highly deficient second supplemental questionnaire response, Commerce appropriately determined in the final results to apply AFA to calculate CPW's dumping margin. Decision Memorandum at 10-15. *U.S. Steel* therefore supports the Commerce's determination in the underlying review, not CPW's arguments to the contrary.

Finally, CPW did in fact have the opportunity to comment – extensively – as to whether or not its deficient cost reporting justified the application of AFA. Remarkably, CPW makes its entire argument as to its lack of opportunity to comment without referencing the rebuttal brief it filed in this administrative review. *See* CPW Br. at 8-13. In the review, the ALPPA Trade Committee submitted a case brief, approximately half of which was devoted to its argument that the agency should apply total AFA to CPW for its failure to provide an adequate cost reconciliation and cost-buildups. *See* ALPPA Trade Committee Case Brief, PD 85 at barcode 4161221-01 / CD 139 at barcode 4161206-01 (Sept. 15, 2021) ("ALPPA Trade Committee Case Brief"). In response, CPW filed a comprehensive rebuttal brief. CPW Rebuttal Brief, PD 86 at barcode 4164751-01 / CD 140 at barcode 4164750-01 (Sept. 28, 2021). In that brief, CPW argued extensively that Commerce should <u>not</u> apply AFA to calculate its dumping margin in the final results because, it alleged, it had cooperated fully in the proceeding and provided a comprehensive and detailed cost reconciliation. *See id.* at 2-7. Commerce fully addressed, and rejected, these arguments by CPW in its final decision memorandum. *See* Decision Memorandum at 9-15. Thus, CPW's argument now that it had no opportunity to comment on the application of total AFA to calculate its dumping margin lacks merit and should be rejected by the Court.

Ct. No. 22-00063

**B.** **Commerce's Decision to Apply Adverse Facts Available Was Supported by Substantial Evidence and Consistent with Law, Including with 19 U.S.C. § 1677e**

In the underlying review, Commerce properly found that necessary information for CPW was not available on the record, that CPW failed to provide such information in the form or manner requested, that CPW thus significantly impeded the proceeding, and that CPW failed to cooperate by not acting to the best of its ability to comply with a request for information. Decision Memorandum at 10-15. As such, Commerce appropriately determined to apply total AFA to calculate CPW's dumping margin in the final results. *See id.*; 19 U.S.C. § 1677e.

CPW argues that it "did not withhold necessary information or significantly impede the investigation," and that it "acted to the best of its ability in meeting Commerce's requests." CPW Br. at 16-19. CPW's argument on this point is based on its assertion that it responded to all questionnaires within the deadlines provided and that it followed Commerce's format for reporting its cost data (except, as it explains, when it did not). *See id.* ("CPW did not isolate those costs associated with the months prior to the POR as a separate step because CPW did not produce MUC in those three months . . . The only other step in which CPW provided an alternate to Commerce's preferred reconciliation structure was the last step . . . ."). The ALPPA Trade Committee agrees with and incorporates by reference Defendant's arguments that CPW did not in fact follow Commerce's specific instructions for submitting a complete cost reconciliation in its initial, first supplemental or second supplemental questionnaire response, and that the CAFC has upheld the application of AFA in cases involving very similar facts. *See* Def. Br. at 7-12.

As one example, in three separate questionnaire responses, CPW submitted data for the entirety of the 2019 calendar year, even though the period of review ("POR") did not begin until April 2019, inconsistent with the agency's clear instructions. *See id.* at 10-11. Commerce requires

Ct. No. 22-00063

every respondent, as one of the first steps of the cost reconciliation (as outlined in the agency's cost reconciliation template), to reconcile the profit and loss data from the audited financial statements to the company's fiscal year trial balance. *See* Initial Questionnaire, PD 11 at barcode 4002246-01 (July 17, 2020) at D-12 – D-13. Where a POR spans multiple fiscal years, the next step of reconciliation typically involves the removal of costs associated with the months outside of the POR from the first fiscal year's figures, and the addition of costs for the months from the second fiscal year that fall within the POR. Commerce repeatedly asked CPW to take this reconciliation step by removing the first three months of 2019 from its cost report. *See, e.g.*, Section D Supp Questionnaire, PD 55 at barcode 4126587-01 / CD 84 at barcode 4126586-01 (May 27, 2021) at 3. CPW repeatedly refused to make this important change in its reporting to be consistent with the agency's requirements. Even in its third questionnaire response on this topic, CPW's only reasoning for failing to do so was that it could not "extract from SAP a costing report that combines years." Section D Second Supplemental Questionnaire Response, PD 69 at barcode 4145685-01 / CD 129 at barcode 4145680-01 (July 22, 2021) at (2nd Supp D)-13 ("CPW Second Supplemental Section D Response"). But that is not what Commerce repeatedly asked for CPW to do. It did not need to submit a report that combined years. It simply needed to remove the first three months of 2019 (which were outside of the POR) from its cost report.

CPW's claim that such removal was unnecessary, *see* CPW Br. at 31-32, is inapposite, and such a determination was not up to the respondent to make. Commerce repeatedly asked CPW to provide data in a certain form and manner, and CPW refused to do so, even thought it could have. In fact, CPW explicitly confirmed that its reporting system was capable of creating such a report. It explained that its "SAP system can generate costing reports for a particular month or for a range of months in the same year." CPW Second Supplemental Section D Response at (2nd Supp D)-13.

Ct. No. 22-00063

Yet it refused to provide such a partial-year report, despite being repeatedly instructed to do so. Commerce was reasonable in finding that such a refusal constituted a failure to provide information in the form and manner requested by the agency. And Defendant's brief describes in detail multiple other deficiencies in CPW's cost reporting, justifying Commerce's application of AFA. *See* Def. Br. at 7-12.

CPW next argues that Commerce's finding that CPW's cost did not reconcile was "based on Commerce's faulty and unreasonable assumptions regarding the issue of 'double-counted' costs in CPW's SAP cost system and its misunderstanding of CPW's reconciliation." CPW Br. at 19. As an initial matter, even if there was any misunderstanding of CPW's reconciliation, the fault for that would lie with CPW alone. The same applies to CPW's arguments regarding the "Analysis Per Category" tab in CPW's supplemental response. *See id.* at 25-29. As the ALPPA Trade Committee emphasized in briefing to the agency, CPW repeatedly failed to provide detailed, step-by-step descriptions in order to explain its voluminous and convoluted reconciliation worksheets, leaving its reconciliation essentially incomprehensible. *See* ALPPA Trade Committee Case Brief at 8. *See also* Def. Br. at 24 (citing *Pro-Team Coil Nail Enter. v. United States*, 419 F. Supp. 3d 1319, 1338 (Ct. Int'l Trade 2019)) ("{I}t was {the respondent's} responsibility to build a clear record – not Commerce's"). Indeed, Commerce explained to CPW in its second supplemental Section D questionnaire: "Your extensive calculation worksheets and reconciliation are difficult to interpret because of the lack of adequate descriptions as to the methodology used in the normal records and in your reporting to Commerce." Second Supplemental D Questionnaire, PD 65 at barcode 4144006-01 / CD 126 at barcode 4144005-01 (July 15, 2021) at 4. Yet CPW still failed to adequately explain its reconciliation.

Ct. No. 22-00063

While CPW now argues that its cost records did not include any double counting, *see* CPW

Br. at 19-25, this is not at all ascertainable from the limited information submitted by CPW to

Commerce during the review.  As Defendant explains:

> {T}he accounting analysis also showed that double counted costs remained in
> Corinth's cost of production file even after all identifiable reconciliation items have
> been removed . . . The cost reconciliation does not show how the double counted
> costs in Corinth's 2019 SAP cost report . . . were excluded for its reporting
> purposes, nor can this be determined from Corinth's section D responses.

Def. Br. at 23.  *See also id.* at 25.  CPW's *ex post facto* attempts to provide in its brief to the Court

explanation as to the double-counting should be rejected, as the respondent failed to provide this

explanation or clarification at the appropriate time at the agency level.  Indeed, when CPW now

argues that its "double-recorded costs {were} eliminated," it cites only to its <u>ministerial error

comments</u>, which were filed after Commerce's final determination was issued.  CPW Br. at 20;

CPW Ministerial Error Comments, PD 101 at barcode 4210166-01 / CD 145 at barcode 4210162-

01 (Feb. 9, 2022).  This is, of course, because CPW never provided any of this explanation in its

questionnaire responses, despite Commerce's multiple, repeated requests for further clarification

of its cost reconciliation.

Even if CPW's untimely explanation were to be accepted, Commerce's AFA determination

rested on substantial evidence in addition to and apart from that double counting.  In addition to

"fail{ing} to provide a proper cutoff of accounting periods and one complete POR cost

reconciliation worksheet," Commerce identified significant additional deficiencies in CPW's cost

reporting, including "differences in materials and conversion costs between costs reported in the

audited financial statements and its SAP system for reportable and non-reportable products and

between finished and semifinished products."  Commerce Memo re: Cost of Production and

Constructed Value Calculation Adjustments for the Final Results, PD 97 at barcode 4208811-01 /

Ct. No. 22-00063

CD 144 at barcode 4208810-01 (Feb. 2, 2022) at 2-4.  The numerous and repeated deficiencies in CPW's three section D questionnaire responses provide more than adequate evidence that necessary information for CPW was not available on the record, that CPW failed to provide such information in the form or manner requested, that CPW thus significantly impeded the proceeding, and that CPW failed to cooperate by not acting to the best of its ability to comply with a request for information.

### C.    Commerce's Determination to Apply Total AFA Was Warranted

Lastly, CPW argues that Commerce improperly applied total AFA – rather than neutral facts available or partial AFA – and that the AFA rate selected by the agency was unduly punitive. The Court should reject these arguments.

CPW argues that an "adverse inference was not warranted against CPW because Commerce failed to account for all of the abundant record evidence demonstrating CPW's attempts to comply with Commerce's cost questionnaires and CPW's complete cooperation during the administrative review."  CPW Br. at 38-39.  This is incorrect.  As explained at length in Defendant's brief, *see* Def. Br. at 5-14, Commerce reasonably concluded that CPW did not exert "maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation."  *See Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003). Indeed, the deficiencies outlined by the ALPPA Trade Committee at the agency level, by Commerce in its final decision memorandum, by Defendant in its response brief and previously in this brief show conclusively that CPW did not use "maximum effort" to respond fully and completely to Commerce's questionnaires in this review.  *See generally* ALPPA Trade Committee Case Brief; Decision Memorandum at 10-15; Def. Br.  This Court has explained as to the "best of its ability" standard in 19 U.S.C. § 1677e that "appellate precedent has explicitly interpreted that

statute to require potential interested parties to a future administrative proceeding to anticipate the information that would be necessary thereto and conduct their information acquisition and maintenance accordingly." *Diamond Sawblades Manufacturers' Coal. v. United States*, Ct. No. 17-00167, slip op. 18-146 at 9 (Ct. Int'l Trade Oct. 23, 2018). CPW clearly failed to meet that standard here, justifying Commerce's decision to apply AFA, particularly given Commerce's significant discretion in this area. *See, e.g.*, *Ta Chen Stainless Steel Pipe Co. v. United States*, 31 CIT 794, 812 (2007) (quoting *Baoding Yude Chem. Indus. v. United States*, 25 CIT 1118, 1126, 170 F. Supp. 2d 1335, 1343 (2001)) (whether applying AFA is appropriate "amounts to a line-drawing exercise {that} is <u>precisely the type of discretion left within the agency's domain.</u>") (emphasis added).

Nor is CPW persuasive in arguing that Commerce should only have applied partial facts available with an adverse inference. *See* CPW Br. at 43-44. Generally, the "use of partial facts available is not appropriate when the missing information is core to the antidumping analysis and leaves little room for the substitution of partial facts without undue difficulty." *Mukand, Ltd. v. United States*, 767 F.3d 1300, 1308 (Fed. Cir. 2014). A company's cost reconciliation is "core to the antidumping analysis." *See id.* A respondent's overall cost reconciliation is an essential part of its cost reporting, as it establishes the validity of the respondent's reported costs by tying them to its audited financial statements. Without such reconciliation, the completeness and accuracy of the reported costs cannot be established, and any CONNUM-specific cost calculations are rendered unusable. In addition to the case law cited by Defendant upholding Commerce's application of AFA when inadequate cost reconciliations were provided, Def. Br. at 6, Commerce has previously explained that agency "practice has been to reject a respondent's submitted information in total when flawed and unreliable cost data renders any price-to-price comparison impossible." Issues

Ct. No. 22-00063

and Decision Memorandum for the Final Determination of the Investigation of Prestressed Concrete Steel Wire Strand from Mexico (Dep't of Commerce Dec. 8, 2003) available at https://access.trade.gov/Resources/frn/summary/mexico/03-30384-1.pdf (last visited on Jan. 20, 2023) at cmt. 6. Thus, as it has in the past, Commerce justifiably decided that the application of partial AFA was inadequate to remedy the deficiencies in CPW's data, requiring the application of total AFA.

Finally, CPW argues that the 41.04 percent dumping margin (from the original antidumping duty petition) applied in the Final Results was "excessive, punitive and unjustified." CPW Br. at 40-42. In arguing that the rate was punitive, CPW largely restates its prior arguments as to why it cooperated with the review and thus AFA should not have been applied at all, rather than making specific arguments as to why the 41.04 percent rate was inappropriate. *See id.* The ALPPA Trade Committee agrees with and incorporates by reference Defendant's response to this argument, *see* Def. Br. at 14-17, and emphasizes that the statute now explicitly permits Commerce to rely on the petition as a source of information when applying an adverse inference. 19 U.S.C. § 1677e(b)(2). CPW asserts that the "only reasonable approach" would have been to use CPW's own dumping margin from the original investigation: 10.26 percent. CPW Br. at 42; *Large Diameter Welded Pipe From Greece*, 84 Fed. Reg. 18,769, 18,771 (Dep't of Commerce May 2, 2019). But using CPW's same calculated rate from a prior segment, when it cooperated, would have failed to meet the objective of applying AFA – to incentivize respondents to cooperate by selecting a rate that is sufficiently adverse to ensure that the uncooperative party does not obtain a more favorable result by failing to cooperate than if it had fully cooperated. *See* SAA at 870, 1994 U.S.C.C.A.N. at 4199. Selecting the same exact rate for CPW when it failed to cooperate as it received when it fully cooperated would not be sufficiently adverse to induce future cooperation.

Ct. No. 22-00063

Moreover, Commerce adequately corroborated the AFA rate selected. *See Ad Hoc Shrimp Trade Action Comm. v. United States*, 802 F.3d 1339, 1354 (Fed. Cir. 2015) (explaining that "corroborat{ing}" an AFA rate means "demonstrating the rate is both reliable and relevant"). To corroborate the petition margin, Commerce examined the transaction-specific margins calculated for CPW in the most recently completed segment of the period (*i.e.*, the investigation). Decision Memorandum at 8. Commerce found that the petition rate of 41.04 percent was within the range of transaction-specific margins calculated for CPW in the investigation, and thus was both reliable and relevant. *Id.* "{A}s long as a rate is properly corroborated according to the statute, Commerce has acted within its discretion and the rate is not punitive." *Papierfabrik August Koehler SE v. United States*, 843 F.3d 1373, 1382 (Fed. Cir. 2016). Commerce thus acted within its discretion here in applying the 41.04 percent rate to CPW, and the Court should sustain the Final Results.

## IV. <u>CONCLUSION</u>

For the reasons detailed above, the ALPPA Trade Committee respectfully submits that this Court should affirm the final results of Commerce's antidumping duty administrative review as to the application of AFA in calculating CPW's dumping margin.

Respectfully submitted,

*/s/ Timothy C. Brightbill*
Timothy C. Brightbill, Esq.
Laura El-Sabaawi, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to the American Line Pipe*
*Producers Association Trade Committee*

Dated: January 20, 2023

<u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Scheduling Order (June 1, 2022), ECF No. 22, the undersigned certifies that this brief complies with the word limitation requirement. The word count for Defendant-Intervenor The American Line Pipe Producers Association Trade Committee's Response Brief, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2021), is 4,714 words.


<u>  /s/ Timothy C. Brightbill  </u>
(Signature of Attorney)

<u>  Timothy C. Brightbill  </u>
(Name of Attorney)

<u>  ALPPA Trade Committee  </u>
(Representative Of)

<u>  January 20, 2023  </u>
(Date)

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **CORINTH PIPEWORKS PIPE INDUSTRY S.A. AND CPW AMERICA CO.,**<br><br>        **Plaintiffs,**<br><br>    **v.**<br><br>**UNITED STATES,**<br><br>        **Defendant,**<br><br>    **and**<br><br>**THE AMERICAN LINE PIPE PRODUCERS ASSOCIATION TRADE COMMITTEE,**<br><br>        **Defendant-Intervenor.** | **Before:  Hon. Leo M. Gordon,<br>       Senior Judge**<br><br>**Court No. 22-00063** |

## <u>ORDER</u>

Upon consideration of Plaintiffs' motion for judgment upon the agency record, Defendant's response thereto, Defendant-Intervenor's response thereto, Plaintiff's reply, the administrative record, and all other papers and proceedings herein, it is here by

**ORDERED,** that Plaintiff's motion is DENIED; and it is further

**ORDERED,** that the Department of Commerce's determination is sustained; and it is further

**ORDERED,** that judgment shall enter in favor of Defendant.

 

 

                                            _____
                                            Hon. Leo M. Gordon, Senior Judge

Dated: _____, 2023
        New York, New York