

**Mowry & Grimson, PLLC**

5335 Wisconsin Avenue, NW
Suite 810
Washington, DC 20015
202.688.3610

www.mowrygrimson.com

April 11, 2023

The Honorable Leo M. Gordon
Senior Judge
United States Court of International Trade
1 Federal Plaza, Room 397
New York, NY 10278

Re:   Corinth Pipeworks Pipe Industry S.A. et al. v. United States, Case No. 22-00063

Dear Judge Gordon,

On behalf of Plaintiffs Corinth Pipeworks Pipe Industry S.A. and CPW America Co. (collectively "CPW"), please find enclosed copies of CPW's amended Memorandum of Point Memorandum of Points and Authorities in support of their motion for judgment on the agency record in accordance with Rule 56.2 of the Rules of this Court ("56.2 Brief) and amended reply brief.  Consistent with the Court's intent to hold a public hearing, CPW amends its 56.2 and reply briefs to make certain information publicly available at this time.  Specifically, CPW makes public certain information contained in pages 24 and 26 of its 56.2 brief and page five of its reply brief.  CPW makes no other changes to its 56.2 and reply briefs besides the unbracketing of certain information.

/s/ Kristin H. Mowry
Kristin H. Mowry
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, NW, Suite 810
Washington, D.C. 20015
202-688-3610
trade@mowrygrimson.com
*Counsel to Plaintiffs*

**THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HONORABLE LEO M. GORDON, SENIOR JUDGE**

<table>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>CORINTH PIPEWORKS PIPE INDUSTRY S.A. AND CPW AMERICA CO.,</td><td>)<br>)<br>)</td><td></td></tr>
<tr><td>Plaintiffs,</td><td>)<br>)</td><td></td></tr>
<tr><td>v.</td><td>)<br>)</td><td>Court No. 22-00063</td></tr>
<tr><td>UNITED STATES,</td><td>)<br>)</td><td></td></tr>
<tr><td>Defendant,</td><td>)<br>)</td><td></td></tr>
<tr><td>THE AMERICAN LINE PIPE PRODUCERS ASSOCIATION TRADE COMMITTEE,</td><td>)<br>)<br>)</td><td></td></tr>
<tr><td>Defendant-Intervenor.</td><td>)<br>)<br>)</td><td></td></tr>
</table>

**REPLY BRIEF IN SUPPORT OF RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD ON BEHALF OF PLAINTIFFS CORINTH PIPEWORKS PIPE INDUSTRY S.A. AND CPW AMERICA CO.**

Kristin H. Mowry
Jeffrey S. Grimson
Jill A. Cramer
Bryan P. Cenko
MOWRY & GRIMSON, PLLC
5335 Wisconsin Ave., NW, Suite 810
Washington, DC 20015
202.688.3610 (ph)
trade@mowrygrimson.com
*Counsel to Plaintiffs*

March 3, 2023

# TABLE OF CONTENTS

Table of Contents .................................................................................................................... i

Table of Authorities ............................................................................................................... ii

ARGUMENT ........................................................................................................................... 1

    I.   THE UNITED STATES AND PETITIONERS FAIL TO SHOW THAT COMMERCE'S FINAL RESULTS WERE SUPPORTED BY SUBSTANTIAL EVIDENCE OR OTHERWISE IN ACCORDANCE WITH LAW ............................................................. 1

        A.   Commerce Failed to Meet its Statutory Obligation to Provide an Opportunity to Comment ..................................................................................................................... 3

        B.   A Remand Is Necessary Consistent with Principles of Fairness and Equity and Pursuant to the Standard of Review ...................................................................... 5

        C.   CPW's Right To Comment on Commerce's Change in Methodology Was Not Removed by Any Alleged Failure to Establish a Clear Record .................................... 9

        D.   The United States and Petitioners Have Failed To Support Commerce's Decision Not To Issue a Post-Preliminary Determination ............................................................. 10

    II.   THE UNITED STATES AND THE PETITIONERS FAIL TO SHOW THAT COMMERCE'S APPLICATION OF TOTAL AFA WAS WARRANTED .................. 14

CONCLUSION ..................................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

Anshan Iron & Steel Co. v. United States,
   27 CIT 1234 (2003) ............................................................................................... 9

Bristol Metals, L.P. et al v. United States,
   No. 09-00127 (Oct. 23, 2009), ECF No. 39 .......................................................... 5

Carpenter Technology Corp. v. United States,
   44 CIT __, 477 F. Supp. 3d 1356 (2020) ............................................................. 8

CC Metals & Alloys, LLC v. United States,
   40 CIT __, 145 F. Supp. 3d 1299 (2016) ..................................................... 5, 6, 7

Fujitsu Gen. v. United States,
   88 F.3d 1034 (Fed. Cir. 1996) ............................................................................ 11

Gov't of Arg. v. United States,
   45 CIT __, 542 F. Supp. 3d 1380 (2021) ....................................................... 10, 12

Home Products Int'l, Inc. v. United States,
   32 CIT 337, 556 F. Supp. 2d 1338 (2008) ........................................................ 4, 8

Home Products Int'l, Inc. v. United States,
   33 CIT 1776, 662 F. Supp. 2d 1360 (2009) .......................................................... 4

Hyundai Elec. & Energy Sys. Co. v. United States,
   15 F.4th 1078 (Fed. Cir. 2021) ......................................................................... 16

Hyundai Electric & Energy Sys. Co. v. United States,
   44 CIT __, 466 F. Supp. 3d 1303 (2020) ........................................................... 15

Hyundai Steel Co. v. United States,
   42 CIT __, 319 F. Supp. 3d 1327 (2018) ........................................................... 13

Jiaxing Bro. Fastener Co. v. United States,
   822 F.3d 1289 (Fed. Cir. 2016) ..................................................................... 10, 12

Koyo Seiko Co., Ltd. v. United States,
   31 CIT 1512, 516 F. Supp. 2d 1323 (2007) ..................................................... 3, 4

Myland Industrial, Ltd. v. United States,
   31 CIT 1696 (2007) ............................................................................................. 15

Nan Ya Plastics Corp. v. United States,
    37 CIT 188, 906 F. Supp. 2d 1348 (2013) ................................................................ 5, 6, 7

Nippon Steel Corp. v. United States,
    337 F.3d 1373 (Fed. Cir. 2003) ................................................................................ 14

Nippon Steel Corp. v. United States,
    458 F.3d 1345 (Fed. Cir. 2006) .................................................................................. 6

NTN Bearing Corp. v. United States,
    74 F.3d 1204 (Fed. Cir. 1995) .............................................................................. 10, 11

Pro-Team Coil Nail Enter., Inc. v. United States,
    44 CIT __, 483 F. Supp. 3d 1242 (2020) ................................................................ 15

Pro-Team Coil Nail Enter. v. United States,
    43 CIT__, 419 F. Supp. 3d 1319 (2019) .................................................................. 15

PT Kenertec Power Sys. v. United States,
    No. 20-03687, slip op. 21-175 (Ct. Int'l Trade Dec. 28, 2021) ......................... 10, 13

Saha Thai Steel Pipe Pub. Co., Ltd. v. United States,
    No. 21-00049, 2022 Ct. Int'l Trade LEXIS 134 (Dec. 2, 2022) ............................... 8

Shikoku Chems. Corp. v. United States,
    16 CIT 382, 795 F. Supp. 417 (1992) ....................................................................... 5

Sidenor Indus. SL v. United States,
    33 CIT 1660, 664 F. Supp. 2d 1349 (2009) ............................................................ 16

Tehnoimportexport v. United States,
    15 CIT 250, 766 F. Supp. 1169 (1991)) ............................................................ 10, 12

U.S. Steel Corp. v. United States,
    34 CIT 252, 712 F. Supp. 2d 1330 (2010) ......................................................... 10, 13

**Statutes**

19 U.S.C. § 1677e(b) ....................................................................................................... 14

19 U.S.C. § 1677m(g) ................................................................................................. 3, 4, 5

**Other Authorities**

Large Diameter Welded Pipe from Greece, 86 Fed. Reg. 43,172 (Dep't of Commerce Aug. 6, 2021) ............................................................................................................................... 1, 7

Large Diameter Welded Pipe From Greece, 87 Fed. Reg. 7120 (Dep't of Commerce Feb. 8, 2022) .................................................................................................................................... 2

Plaintiffs Corinth Pipeworks Pipe Industry S.A. and CPW America Co. (collectively "CPW") reply to the response briefs of Defendant United States and Defendant-Intervenor the American Line Pipe Producers Association Trade Committee ("Petitioners"). See Def.'s Resp. to Pls. Mot. for J. on the Admin. R. (Jan. 6, 2023) (Nonconfidential Version), ECF No. 33 ("Def.'s Br."); Def.-Int. the American Line Pipe Producers Ass'n Resp. Br. (Jan. 20, 2023), ECF No. 35 ("Def.-Int.'s Br.").[1]

## ARGUMENT

### I. THE UNITED STATES AND PETITIONERS FAIL TO SHOW THAT COMMERCE'S FINAL RESULTS WERE SUPPORTED BY SUBSTANTIAL EVIDENCE OR OTHERWISE IN ACCORDANCE WITH LAW

The United States and the Petitioners do not address the fundamental issue in this action – that this Court cannot decide this case on the merits because the Department of Commerce ("Commerce") has not considered or addressed CPW's arguments in the first instance. Commerce changed its Preliminary Results methodology (relying on CPW's data and resulting in a dumping margin of zero percent) to applying adverse facts available ("AFA") in the Final Results due to an erroneous analysis of CPW's reported costs and accounting system. Compare Large Diameter Welded Pipe from Greece, 86 Fed. Reg. 43,172 (Dep't of Commerce Aug. 6, 2021) ("Preliminary Results"), and accompanying Decision Mem. for the Preliminary Results of the 2019-2020 Administrative Review of the Antidumping Duty Order on Large Diameter Welded Pipe from Greece (Dep't of Commerce July 30, 2021), available at https://access.trade.gov/Resources/frn/summary/greece/2021-16834-1.pdf (last visited on this date) ("Preliminary Decision Mem."), with Large Diameter Welded Pipe From Greece, 87 Fed.

---

[1] All references to the United States' and CPW's briefs are to the nonconfidential versions unless otherwise noted.

Reg. 7120 (Dep't of Commerce Feb. 8, 2022) ("Final Results"), and accompanying Decision Mem. for the Final Results of the 2019-2020 Administrative Review of the Antidumping Duty Order on Large Diameter Welded Carbon and Alloy Steel Line Pipe from Greece at 5-7 (Dep't of Commerce Feb. 2, 2022).

Commerce did not apply AFA against CPW based on any failure to provide the requested cost reconciliation, but rather due to Commerce's erroneous conclusion that "CPW's reported costs were not reconciled to its normal books and records." Final Results Calculation Mem., CD 144 (PD 97) at 4 (Feb. 2, 2022). Commerce's incorrect assumptions rested on its analysis of CPW's response data contained in the four attachments to Commerce's Final Results Calculation Memorandum. Id. at 1-4 and Attachs. 1-4. Once Commerce's mistaken assumptions are corrected, as demonstrated in CPW's analysis before this Court, Commerce's own calculations prove that CPW's costs fully reconcile. See Mem. of P&A in Support of Pls.' Mot. for J. on the Agency R. Pursuant to Rule 56.2 at 23-24 and Ex. 1 (Sept. 16, 2022) (Nonconfidential Version), ECF No. 29 ("CPW's Br.").

The United States and Petitioners do not dispute that Commerce's analysis and calculations, constituting the entire substance of Commerce's determination, were never disclosed to CPW prior to the Final Results. See Def.'s Br. at 21-26; Def.-Int.'s Br. at 8-12. Indeed, they could not address these arguments because Commerce did not consider them in the first instance. Commerce's application of total AFA was unsupported by substantial evidence and contrary to law because Commerce failed to provide CPW with an opportunity to comment on Commerce's changed methodology – the detailed analysis that led to Commerce's reliance on AFA in the Final Results. See CPW's Br. at 6-13.

The United States' and Petitioners' arguments that Commerce has no statutory obligation to provide CPW with an opportunity to comment on Commerce's change in methodology are unpersuasive.  See Def.'s Br. at 17-21; Def.-Int's Br. at 2-7.  Moreover, CPW's right to comment was not removed by any alleged failure to establish a clear record because CPW submitted its data consistent with Commerce's cost verification methodology from the initial investigation.  See Def.'s Br. at 24; Def.-Int's Br. at 10.  This Court cannot properly apply the substantial evidence standard of review to CPW's claims in the absence of Commerce having addressed these issues.  Finally, the United States and Petitioners fail to support Commerce's decision not to issue a post-preliminary determination.  See Def.'s Br. at 17-18; Def.-Int.'s Br. at 5-7.  If CPW had been given a post-preliminary opportunity to comment, CPW would have established that its costs fully reconciled, as it has done before this Court.  See CPW's Br. at 19-26 and Exs. 1-2 (Confidential Version), ECF No. 28.

### A.  Commerce Failed to Meet its Statutory Obligation to Provide an Opportunity to Comment

The United States and Petitioners incorrectly maintain that 19 U.S.C. § 1677m(g) did not require that Commerce provide CPW with an opportunity to comment on Commerce's change in methodology from one that resulted in a rate of zero percent for CPW in the Preliminary Results to one that resulted in the application of total AFA in the Final Results.  See Def.'s Br. at 18; Def.-Int.'s Br. at 4.  In Koyo Seiko Co., Ltd. v. United States, 31 CIT 1512, 1520, 516 F. Supp. 2d 1323, 1333 (2007), the Court succinctly summarized Commerce's obligations under 19 U.S.C. § 1677m(g): "in order to change its methodology, Commerce must provide the affected parties with notice and the opportunity to comment before the final determination is made."  Id. (citing 19 U.S.C. § 1677m(g)).  The United States disputes CPW's reliance on Koyo, arguing that it involved a different "methodological" issue and not a case of total AFA.  See Def.'s Br. at 19.  The principle

of law established in <u>Koyo</u> is applicable here.  <u>See</u> 31 CIT at 1520, 516 F. Supp. 2d at 1333.  In rejecting CPW's ministerial error comments, Commerce confirmed that its application of AFA was "methodological in nature."  Ministerial Error Mem., PD 110 at 4 (Mar. 3, 2022).  Unlike in <u>Koyo</u> where the Court held that Commerce lawfully revised its methodology "after providing the parties with notice and meaningful opportunity to comment on the change" prior to Commerce's final determination, CPW was not afforded a similar opportunity to comment on Commerce's methodological change.  31 CIT at 1520, 516 F. Supp. 2d at 1333-34.

Remand is the appropriate remedy when Commerce fails to meet its obligations under 19 U.S.C. § 1677m(g).  <u>See, e.g.</u>, <u>Home Products Int'l, Inc. v. United States</u>, 32 CIT 337, 556 F. Supp. 2d 1338 (2008) ("<u>Home Products I</u>").  The Court's reason for granting remand in <u>Home Products I</u> – because the parties did not have an opportunity to comment on Commerce's new methodology prior to the final results – is directly applicable here.  32 CIT at 338-339, 556 F. Supp. 2d at 1340 (citing to 19 U.S.C. § 1677m(g)).  The United States attempts to distinguish that case by focusing on Commerce's subsequent remand determination as sustained by the Court.  <u>See</u> Def.'s Br. at 19 (citing <u>Home Products Int'l, Inc. v. United States</u>, 33 CIT 1776, 662 F. Supp. 2d 1360 (2009) ("<u>Home Products II</u>")).  The ultimate result in <u>Home Products II</u>, where Commerce reverted to its preliminary methodology after considering interested parties' comments for the first time, is precisely the outcome CPW seeks and predicts here.  <u>See</u> 33 CIT at 1778-79, 662 F. Supp. 2d at 1363.

Commerce's own calculations reveal that CPW's reported costs fully reconcile once the erroneous step in Commerce's calculations is omitted.  <u>See</u> CPW's Br. at 19-26 and Ex. 1 (Confidential Version) (showing how the figures referenced by Commerce in the Final Results Calculation Memorandum reconcile the total costs reported in CPW's COP/CV database to within

0.004 percent in 2019 and 0.006 percent in the first four months of 2020).   Notably, the United States recognized that Commerce's challenged methodology in <u>Home Products II</u> "defied commercial reality."  Def.'s Br. at 19.   Here, too, the methodology CPW is challenging defies commercial reality because it yielded "an impossibly low cost" with a "calculated" cost of a raw material that was only 10 percent of CPW's actual cost and an astonishing 5 percent of the sales price.  <u>See</u> CPW's Br. at 24, n. 9 (Confidential Version).  Consistent with the <u>Home Products</u> litigation, this Court should remand Commerce's <u>Final Results</u> to allow Commerce to consider the arguments presented by CPW on appeal.

**B.   A Remand Is Necessary Consistent with Principles of Fairness and Equity and Pursuant to the Standard of Review**

Beyond Commerce's obligation under 19 U.S.C. § 1677m(g), the Court has more broadly held that Commerce cannot introduce a new methodology in the final results without providing parties with an opportunity to comment, and remand is appropriate when Commerce fails to meet this obligation.  <u>See</u> Bristol Metals, L.P. v. United States, No. 09-00127 (Oct. 23, 2009), ECF No. 39 ("Bristol Order")[2]; <u>Nan Ya Plastics Corp. v. United States</u>, 37 CIT 188, 194-95, 906 F. Supp. 2d 1348, 1354 (2013); <u>CC Metals & Alloys, LLC v. United States</u>, 40 CIT __, __,145 F. Supp. 3d 1299, 1310-11 (2016).  "Principles of fairness prevent Commerce from changing its methodology" without providing an opportunity to comment. <u>Shikoku Chems. Corp. v. United States</u>, 16 CIT 382, 388, 795 F. Supp. 417, 421 (1992).  These principles align with the applicable standard of review.  Commerce's <u>Final Results</u> can be sustained as supported by substantial evidence only if Commerce took into account not only the information that supports its decision but also whatever in the record "fairly detracts from its weight."  <u>Nippon Steel Corp. v. United States</u>, 458 F.3d 1345,

---

[2] The United States did not even attempt to distinguish Bristol Metals.  <u>See</u> CPW's Br. at 9-10.

1351 (Fed. Cir. 2006).  A court cannot properly assess the reasonableness of Commerce's determination when Commerce has not had an opportunity to evaluate the arguments that may detract from its conclusions.  As discussed below, neither the United States nor Petitioners respond to CPW's arguments that its costs fully reconcile.  Rather, they rely on misplaced arguments that the cases relied on by CPW do not mandate a remand.  See Def.'s Br. at 5-14; Def-Int's Br. at 5-8.

Court precedent establishes that a remand is necessary if Commerce does not provide parties with an opportunity to comment on a change in methodology.  In Nan Ya, where Commerce made a significant change in the AFA rate that it applied between the preliminary and final results, the Court remanded for Commerce to address arguments concerning Commerce's change in methodology.  See 37 CIT at 195, 906 F. Supp. 2d at 1354-55.  The United States claims Nan Ya is distinguishable because it involved the calculation of AFA rather than the application of AFA.  See Def.'s Br. at 20.  In CC Metals, Commerce changed its adjustment to normal value in the final results based on information submitted after the preliminary results and the Court remanded for Commerce to consider the arguments from the respondent.  See 40 CIT at __, 145 F. Supp. 3d at 1310-11. The United States attempts to distinguish CC Metals on the grounds that the Court concluded that there was "merit" in plaintiffs' contentions that Commerce's calculations conflicted with its past practice whereas the United States claims CPW's claims do not.  See Def.'s Br. at 19.  Notwithstanding these quibbles, both cases address the precise issue presented here: whether Commerce must provide a party with an opportunity to comment before changing its methodology between the preliminary and final results.

The United States and Petitioners have not responded on the merits to CPW's argument that its costs fully reconcile but only reiterate the erroneous claims in Commerce's Final Results

Calculation Memorandum.  See Def.'s Br. at 8-12, 21-26; Def-Int.'s Br. at 8-9, 11-12.  Given that Commerce never "consider{ed} these arguments in the first instance," neither party could have responded because doing so would be "post hoc rationalizations of agency counsel to which the court may not defer."  Nan Ya, 37 CIT at 194, 906 F. Supp. 2d at 1354-55; CC Metals, 40 CIT at __, 145 F. Supp. 3d at 1311.  The United States' inability to even respond to CPW's principal contention that Commerce's calculations demonstrate that CPW's costs do reconcile necessitates a remand so that Commerce can consider CPW's arguments.

The United States argues that unlike in Nan Ya, CPW did have an opportunity in briefing to argue that its data were complete and to respond to the Petitioners' request for AFA.  See Def.'s Br. at 20.  The United States and Petitioners mischaracterize CPW's arguments as suggesting that the mere reliance on AFA constitutes a change in methodology.  See Def.'s Br. at 18; Def.-Int.'s Br. at 4-5.  CPW's argument is not that it did not have an opportunity to respond to Petitioners' request for AFA but instead that CPW did not have an opportunity to respond to Commerce's erroneous understanding of the cost reconciliation that led to its change in methodology to rely on AFA.  In the Preliminary Results, Commerce disregarded Petitioners' Pre-Preliminary Comments calling for AFA and relied on CPW's reported cost reconciliation to calculate a zero percent margin for CPW.  See Preliminary Decision Mem. at 2; Preliminary Results, 86 Fed. Reg. 43,172. By rejecting Petitioners' request for total AFA, Commerce gave no indication in the Preliminary Results that it perceived problems with CPW's cost reconciliation, let alone alerted CPW to the specific concerns disclosed for the first time in the Final Results. Compare Preliminary Decision Mem. at 2, with Final Results Calculation Mem., CD 144 (PD 97) at 2-4, Attach. 1-2.  Further, Petitioners' case brief calling for total AFA was nearly identical in wording to the arguments raised in Petitioners' Pre-Preliminary Comments that had previously been rejected by Commerce in the

Preliminary Results.  Compare Petitioners' Pre-Preliminary Comments, CD 125 (PD 64) at 1-7 (July 9, 2021), with Petitioners' Case Brief, CD 139 (PD 85) at 3-11 (Sept. 14, 2021).  The fact that CPW responded to **Petitioners'** general arguments does not mean that CPW had an opportunity to comment on **Commerce's** erroneous decision to apply total AFA for the first time at the Final Results.  See generally Saha Thai Steel Pipe Pub. Co., Ltd. v. United States, No. 21-00049, 2022 Ct. Int'l Trade LEXIS 134, at *37-39 (Dec. 2, 2022) (holding that a party did not fail to exhaust its administrative remedies, even though Petitioners had commented on the relevant issue, because the respondent was not "required to predict that Commerce would accept {petitioner's} arguments and change its decision" (internal citation omitted)).

The United States has recognized the necessity of remand to consider the arguments of a party in the first instance.  In addition to Home Products I, the Government sought and the Court granted a motion for a voluntary remand in Carpenter Technology Corp. v. United States, 44 CIT __, __, 477 F. Supp. 3d 1356, 1359-61 (2020), for Commerce to reconsider the change in calculating a respondent's dumping margin based on partial AFA between the preliminary and final results.  In granting the request for remand, the Court concluded that the United States would have a "limited ability to defend Commerce's determination because, by adopting the new methodology in its Final Results, Commerce did not have an opportunity to address Plaintiffs' arguments."  Id. at __, 477 F. Supp. at 1362; see also Saha Thai, 2022 Ct. Int'l Trade LEXIS 134, at *34 (remanding where Commerce did not "provide the respondent with notice and an opportunity to remedy").  The United States has failed to sufficiently explain its reasoning for treating this action differently than Home Products I and Carpenter by not seeking a voluntary remand.

Commerce's <u>Final Results</u> cannot be supported by substantial evidence, nor should this Court defer to the agency, when Commerce has not had an opportunity to consider CPW's arguments that detract from the weight of its conclusion.   A remand is necessary to allow Commerce to consider CPW's arguments before Commerce's decision can be reviewed by this Court.

### C. CPW's Right To Comment on Commerce's Change in Methodology Was Not Removed by Any Alleged Failure to Establish a Clear Record

The United States and Petitioners insist that CPW failed to provide a clear record, and, as a result, CPW has no right to address the points raised by Commerce in the <u>Final Results</u>.  <u>See</u> Def.'s Br. 24; Def.-Int.'s Br. at 10.  Commerce's obligation to provide an opportunity to comment, however, is heightened when a respondent party relied on Commerce's prior methodology.  <u>See generally</u> <u>Anshan Iron & Steel Co. v. United States</u>, 27 CIT 1234, 1241-1242 (2003) ("Commerce may not alter its methodology where a respondent has detrimentally relied on an old methodology used in previous reviews.").  CPW relied on the methodology verified and followed by Commerce in the initial investigation when reconciling its reported costs.  <u>See</u> CPW's Br. at 18.  Commerce's errors as identified by CPW in its opening brief are not the result of CPW's failure to properly explain but rather stem from Commerce deviating from the previous methodology it used to verify CPW's costs.  Commerce's change from its past practice led it to fundamentally misunderstand how CPW's "double-counted" costs are eliminated from its SAP system and financial accounting.  <u>Id.</u> at 19-20.  Commerce also incorrectly read the headings on CPW's exhibits and charts by mistaking SAP data for data sourced from the financial accounting system.  <u>See id.</u> at 25-29.  CPW cannot be faulted for not clarifying a record that it believed was clear based on the methods that Commerce had previously accepted.

**D. The United States and Petitioners Have Failed To Support Commerce's Decision Not To Issue a Post-Preliminary Determination**

The United States and Petitioners both assert that Commerce's determination was reasonable because Commerce may amend its preliminary results without issuing a subsequent determination based on a changed understanding of the record. See Def.'s Br. at 17-18 (citing NTN Bearing Corp. v. United States, 74 F.3d 1204, 1208 (Fed. Cir. 1995); Jiaxing Bro. Fastener Co. v. United States, 822 F.3d 1289, 1300 (Fed. Cir. 2016); Gov't of Arg. v. United States, 45 CIT __, 542 F. Supp. 3d 1380, 1391 (2021); Tehnoimportexport v. United States, 15 CIT 250, 766 F. Supp. 1169 (1991)); Def.-Int.'s Br. at 4-7 (citing PT Kenertec Power Sys. v. United States, No. 20-03687, slip op. 21-175 (Ct. Int'l Trade Dec. 28, 2021); U.S. Steel Corp. v. United States, 34 CIT 252, 712 F. Supp. 2d 1330 (2010)). The United States mischaracterizes CPW's arguments as requesting an opportunity to comment after the Final Results. See Def.'s Br. at 18. CPW argues the exact opposite – that it should have had the opportunity to comment prior to the Final Results. Commerce could have avoided this entire appeal and met its underlying obligation to calculate an accurate antidumping margin if Commerce had issued a post-preliminary determination explaining its application of AFA. CPW could have then demonstrated in either its case brief or a post-preliminary brief that its costs fully reconcile.

The United States' reliance on NTN Bearing to support its argument that Commerce was not required to issue a post-preliminary determination providing its detailed analysis for comment is misplaced as both a factual and substantive matter. See Def.'s Br. at 17. Factually, NTN Bearing involved a respondent's attempts to correct a clerical error in the information that it submitted to Commerce. See NTN Bearing, 74 F.3d at 1207. The instant action is distinguishable because the error here was not committed by CPW but rather by Commerce in its misunderstanding of CPW's costs. Further, the respondent's error in NTN Bearing became apparent after Commerce released

its preliminary calculations, see id., whereas here Commerce's error was not apparent until the Final Results – after the briefing deadlines had passed.  Substantively, in holding that Commerce abused its discretion in not considering the corrections submitted by the respondent in NTN Bearing, the Federal Circuit emphasized that Commerce's duty is to "determine dumping margins 'as accurately as possible'" and that a "correction of {the respondents'} errors would {not} have required beginning anew."  Id. at 1208.  Here too, Commerce need not have begun anew but, consistent with its past practice, could have issued a post-preliminary determination.  See CPW's Br. at 11-12 (noting past instances where Commerce issued a post-preliminary determination). Issuing a post-preliminary determination would have ensured that Commerce calculated CPW's dumping margin as accurately as possible because CPW could have then demonstrated in its briefing that its costs fully reconcile.

The United States also claims that Commerce is due "tremendous deference" because antidumping duty calculations inherently involve complex and technical matters.  Def.'s Br. at 21-22 (quoting Fujitsu Gen. v. United States, 88 F.3d 1034, 1039 (Fed. Cir. 1996)).  Commerce may be owed a degree of deference, but not when its conclusions and reasoning for making a change in methodology have not been made available for the parties to comment on prior to being adopted. In Fujitsu, the Court deferred to Commerce's expertise because the respondent did "not put forth any practical evidence, analysis, or examples" in support of its arguments.  88 F.3d at 1039. Unlike in that case, CPW never had the opportunity to "put forth" its own analysis until briefing before this Court.  Deference is not owed to Commerce here because it has not considered CPW's arguments demonstrating that Commerce was incorrect.

The United States and Petitioners acknowledge that although Commerce may change its stance from a preliminary results, it may only do so where "the reasoning for the change and its

decision is supported by substantial evidence and in accordance with law.'"  Def.'s Br. at 17

(citation and internal quotation marks omitted); see also Def.-Int.'s Br. at 4.  Deference is not owed

to Commerce because Commerce's application of AFA was unsupported by substantial evidence

as its conclusions rested on a fundamental misunderstanding of CPW's data.  In the Final Results,

Commerce made four very specific findings that were premised on four charts in attachments to

the Final Results.  See CPW's Br. at 19-36.  CPW has shown that each of the conclusions was

premised on a basic misunderstanding and/or interpretation of CPW's cost reconciliation and

supporting documentation.  See id.  Commerce's charts actually prove that CPW's costs do

reconcile had Commerce not made an unwarranted final adjustment in its cost reconciliation (to

eliminate costs that it erroneously believed had been double-counted in CPW's reported costs).

See id. at 22-24, Ex. 1 (Confidential Version).  Once CPW's arguments are fully considered, the

only reasonable conclusion based on the record is that its costs fully reconcile.

    The cases cited by the United States and Petitioners for the proposition that Commerce

may make changes between the preliminary and final results without issuing a subsequent

determination are easily distinguishable because Commerce did provide an opportunity for

comment in those cases.  See Def.'s Br. at 17-18; Def.-Int.'s Br. at 4-7.  In Jiaxing Bros., the parties

knew that Commerce was selecting Thailand as the surrogate country in the preliminary results

and were able to comment on it.  See 822 F.3d at 1300.  Similarly, in Tehnoimportexport, the Court

found that there was ample evidence that the respondent was aware that a surrogate country other

than the one they preferred might be selected for the final determinations and that the selected

country was "among the finalists."  15 CIT at 255-56, 766 F. Supp. at 1175.  In Government of

Argentina, both Petitioner and Commerce placed new information on the record after the

preliminary results and all parties had a chance to comment on this information before the final

results.  45 CIT at __, 542 F. Supp. 3d at 1387.[3]  In PT Kenertec, Commerce's change in understanding was based on information submitted by the Indonesian Government (not Commerce) prior to the final results, and nowhere did the Court highlight that any party lacked notice of this change.  See No. 20-03687, slip op 21-175 at 12-14.  Finally, in U.S. Steel Corp., the Court explained that Commerce changed its methodology in the final results based on documentation provided before the preliminary results and considered its methodology "in light of the parties' briefing."  34 CIT at 281, 712 F. Supp. 2d at 1355-56.

In all these cases, the record contained all the information necessary for a respondent to fully comment on any relevant issues in its case brief prior to the issuance of a final decision by Commerce.  The purpose of briefing, whether it be through a post-preliminary briefing or the standard briefing process, is to allow parties "to convince Commerce to make appropriate revisions in the final decision."  Id.  CPW had no such opportunity here.  Again, the calculations relied on by Commerce were not put on the record until the Final Results and Commerce rejected CPW's attempts to clarify those documents in its ministerial error comments.  See Ministerial Error Mem., PD 110 at 4.  Given the factual distinctions between this action and the aforementioned cases, the Court should not be persuaded by the United States' arguments that Commerce may change its stance on fundamental issues, and reverse its Preliminary Results, without issuing a subsequent determination to allow for an opportunity for comment.  Such a conclusion conflicts with Commerce's underlying obligation to calculate an accurate margin.

---

[3] The United States relies on Hyundai Steel Co. v. United States, 42 CIT __, __, 319 F. Supp. 3d 1327, 1343 (2018), but the precise issue in that case was subject to an onsite verification after the issuance of the preliminary determination.  If an onsite verification had been conducted in this case, CPW could have prevented many of the misunderstandings and errors made by Commerce.

**II.   THE UNITED STATES AND THE PETITIONERS FAIL TO SHOW THAT COMMERCE'S APPLICATION OF TOTAL AFA WAS WARRANTED**

Commerce's determination to apply <u>total</u> AFA was unsupported by substantial evidence and contrary to law because CPW did not "fail{} to cooperate by not acting to the <u>best of its ability</u> to comply with a request for information." 19 U.S.C. § 1677e(b)(1) (emphasis added).  The United States' and Petitioners' arguments for the application of total AFA misrepresent the "best of its ability" standard and are simply a reiteration of Commerce's erroneous <u>Final Results</u>.  <u>See</u> Def.'s Br. at 4-14; Def-Int.'s Br. at 12-13.

The United States fails to accurately articulate the "best of its ability" standard.  <u>See</u> Def.'s Br. at 4. While it is true that this standard "does not condone inattentiveness, carelessness, or inadequate record keeping," Def.'s Br. at 3 (quoting <u>Nippon Steel Corp. v. United States</u>, 337 F.3d 1373 (Fed. Cir. 2003)), the United States ignores that this standard "does not require perfection." <u>Nippon Steel</u>, 337 F.3d at 1382.  Further, "{t}he focus of {19 U.S.C. § 1677e(b)} is respondent's <u>failure to cooperate to the best of its ability</u>, not its failure to provide requested information." <u>Id.</u> at 1382.  CPW cooperated to the best of its ability because it presented a cost reconciliation in the "form and manner" requested by Commerce.  <u>See</u> CPW Br at 17-18.  To the extent that CPW allegedly failed to provide the information requested by Commerce, this was not the result of the "inattentiveness, carelessness, or inadequate record keeping," that <u>Nippon Steel</u> called out, but instead CPW's reliance on the verification methodology employed by Commerce in its initial investigation.  <u>See</u> CPW's Br. at 18.  If Commerce or this Court finds that any of Commerce's determinations concerning CPW's cost reconciliation are incorrect, then Commerce and this Court must consider whether partial or neutral facts available is the appropriate remedy for any perceived deficiencies.  <u>See id.</u> at 42-43.  For a "small gap" in the record, the United States appears to concede that "gap filling" may be the appropriate remedy.  Def.'s Br. at 11.

14

The cases cited to support the argument that Commerce may apply total AFA when respondents fail to follow Commerce's reconciliation instructions are distinguishable.  See Def.'s Br. at 6-8.  In both Myland Industrial, Ltd. v. United States, 31 CIT 1696, 1698-99 (2007) and Pro-Team Coil Nail Enter., Inc. v. United States, 44 CIT __, __, 483 F. Supp. 3d 1242, 1248 (2020) ("Pro-Team II"), the respondents did not dispute the finding by Commerce that they had failed to complete their cost reconciliations.  CPW's position throughout this proceeding has been that it completed the requested cost reconciliation consistent with the manner accepted by Commerce in the original investigation.  See CPW's Br. at 17-18.  CPW supported its conclusion by showing how the costs reconcile using Commerce's own worksheets.  See id. at Ex. 1 (Confidential Version).

Further, in Pro-Team Coil Nail Enter. v. United States, 43 CIT__, __, 419 F. Supp. 3d 1319, 1336 (2019) ("Pro-Team I"), the Court found that even if cost information is missing from the record, this fact alone is not a license to apply an adverse inference.  The Court remanded there because Commerce "failed to account for evidence demonstrating {the respondent's} attempts to comply with Commerce's supplemental questionnaire or apprise the court of its reasons for nevertheless finding less than full cooperation."  Id. at 1339-40.  While the United States notes that the Court in Pro-Team II ultimately sustained Commerce's decision on remand, see Def.'s Br. at 7-8, that does not take away from the fact that remand is warranted here because Commerce failed to account for evidence demonstrating CPW's attempts to fully cooperate with Commerce.

In Hyundai Electric & Energy Sys. Co. v. United States, Commerce applied total AFA for several different reasons, including because the respondent "failed to identify adequately and explain each reconciliation item," which was "acute" given that Commerce found that the respondent's normal books and records did not accurately capture costs on a project-specific basis.

44 CIT __, __, 466 F. Supp. 3d 1303, 1316 (2020) ("Hyundai I") (aff'd Hyundai Elec. & Energy Sys. Co. v. United States, 15 F.4th 1078 (Fed. Cir. 2021) ("Hyundai II")).   CPW followed Commerce's cost reconciliation template and identified and labeled each reconciliation item.  See CPW's Br. at 18-19.

Importantly, in the Hyundai litigation, Commerce applied total AFA in the preliminary results and all parties had an opportunity to comment on Commerce's AFA determination prior to the final results.  See Hyundai II, 15 F.4th at 1085; see also Sidenor Indus. SL v. United States, 33 CIT 1660, 1662, 664 F. Supp. 2d 1349, 1352-53 (2009).  CPW had no such opportunity to comment.  The United States' reliance on Hyundai I and II and Sidenor does not support its argument that Commerce may rely on AFA when respondents fail to follow Commerce's reconciliation instructions because in those cases Commerce applied AFA in its preliminary determination and the respondents, unlike CPW, had an opportunity to comment.

In sum, Commerce's determination to apply total AFA against CPW was unsupported by substantial evidence and contrary to law because CPW cooperated to the best of its ability.

**CONCLUSION**

For the reasons discussed above, CPW respectfully requests that this Court grant its motion for judgment on the agency record and remand the <u>Final Results</u> for redetermination consistent with CPW's initial brief and this reply brief.

                                        Respectfully submitted,

Dated: March 3, 2023                    <u>/s/ Kristin H. Mowry</u>
                                        Kristin H. Mowry
                                        Jeffrey S. Grimson
                                        Jill A. Cramer
                                        Bryan P. Cenko
                                        Mowry & Grimson, PLLC
                                        5335 Wisconsin Avenue, NW, Suite 810
                                        Washington, D.C. 20015
                                        202-688-3610
                                        trade@mowrygrimson.com
                                        *Counsel to Plaintiffs*

## CERTIFICATE OF COMPLIANCE

As required by Paragraph 2 of the Standard Chambers Procedures of the Court of International Trade, I, Kristin H. Mowry, hereby certify that this brief complies with the word limitations set forth in Paragraph 2(B) of the Standard Chamber Procedures, as modified by the joint scheduling order in this case. Excluding the table of contents, table of authorities, signature block and any certificates of counsel, the word count for this brief is 5,067 words.

Dated: <u>March 3, 2023</u>

<u>/s/ Kristin H. Mowry</u>
Kristin H. Mowry
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, NW, Suite 810
Washington, D.C. 20015
202-688-3610
trade@mowrygrimson.com
*Counsel to Plaintiffs*