# United States Court of Appeals for the Federal Circuit

———————————

**CORINTH PIPEWORKS PIPE INDUSTRY SA, CPW AMERICA CO.,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES, THE AMERICAN LINE PIPE PRODUCERS ASSOCIATION TRADE COMMITTEE,**
*Defendants-Appellees*

———————————

2023-2094

———————————

Appeal from the United States Court of International Trade in No. 1:22-cv-00063-LMG, Senior Judge Leo M. Gordon.

———————————

Decided: September 8, 2025

———————————

BRYAN PATRICK CENKO, Mowry & Grimson, PLLC, Washington, DC, argued for plaintiffs-appellants. Also represented by JILL CRAMER, JEFFREY S. GRIMSON, YIXIN LI, KRISTIN HEIM MOWRY, SARAH WYSS.

ASHLEY AKERS, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee United States. Also represented by BRIAN M. BOYNTON, PATRICIA M. MCCARTHY, LOREN MISHA PREHEIM; CHRISTOPHER KIMURA,

Office of the Chief Counsel for Trade Enforcement & Compliance, United States Department of Commerce, Washington, DC.

TIMOTHY C. BRIGHTBILL, Wiley Rein, LLP, Washington, DC, argued for defendant-appellee American Line Pipe Producers Association Trade Committee. Also represented by PAUL J. COYLE, LAURA EL-SABAAWI, ELIZABETH S. LEE.

————————————

Before REYNA, TARANTO, and STARK, *Circuit Judges*.

REYNA, *Circuit Judge*.

Appellants challenge the judgment of the United States Court of International Trade that sustained the final determination of the United States Department of Commerce in the first annual administrative review of an antidumping duty order covering certain large diameter welded pipe from Greece. Appellants assert that Commerce erred when it rejected the information they submitted during the review and instead used "facts otherwise available" under 19 U.S.C. § 1677e and employed an "adverse inference" in reaching its final determination. For the reasons set forth below, we affirm.

BACKGROUND

I. Antidumping Investigation and Order

In February 2018, the United States Department of Commerce ("Commerce") initiated antidumping duty investigations on imports of certain large diameter welded pipe from Greece and several other countries. *Large Diameter Welded Pipe from Canada, Greece, India, the People's Republic of China, the Republic of Korea, and the Republic of Turkey: Initiation of Less-Than-Fair-Value Investigations*, 83 Fed. Reg. 7154 (Dep't of Commerce Feb. 20, 2018). The investigation involving exports from Greece resulted in a final affirmative determination of sales at less than

fair value, i.e., dumping. *Large Diameter Welded Pipe from Greece: Final Determination of Sales at Less Than Fair Value*, 84 Fed. Reg. 6364 (Dep't of Commerce Feb. 27, 2019). As a result, Commerce published an antidumping duty order covering large diameter welded pipe from Greece. *Large Diameter Welded Pipe From Greece: Amended Final Affirmative Antidumping Determination and Antidumping Duty Order*, 84 Fed. Reg. 18769 (Dep't of Commerce May 2, 2019) ("*Antidumping Duty Order*").

In the *Antidumping Duty Order*, appellants Corinth Pipeworks Pipe Industry SA, the sole producer and exporter of the pipe at issue, and CPW America Co., its U.S. subsidiary and U.S. importer (collectively, "Corinth"), were assessed an antidumping duty margin of 10.26% *ad valorem*. 84 Fed. Reg. at 18771; *see Corinth Pipeworks Pipe Indus. SA v. United States*, 633 F. Supp. 3d 1314, 1317 (Ct. Int'l Trade 2023) ("*Trade Court Decision*").

## II. Administrative Annual Review

In July 2020, Commerce published a notice of initiation of administrative reviews concerning various antidumping duty and countervailing duty orders. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 85 Fed. Reg. 41540 (Dep't of Commerce July 10, 2010). The notice stated that it would review the large diameter welded pipe from Greece subject to the *Antidumping Duty Order*. *Id.* at 41543. Commerce identified Corinth as the sole respondent in the review and determined the period of review as April 19, 2019, to April 30, 2020. *Id.*

### A. Initial Questionnaire

Shortly after initiation, Commerce issued Corinth an initial antidumping questionnaire. J.A. 44–210. Commerce requested per-unit cost of production and constructed value costs based on "actual costs" during the period of review, as recorded under Corinth's cost

accounting system. J.A. 152. Commerce instructed Corinth that its per-unit cost of production and constructed value costs "must reconcile to the actual costs reported in your company's normal cost accounting system and to the accounting records used by your company to prepare its financial statements." J.A. 160. Commerce provided a sample reconciliation worksheet, requesting Corinth follow "a 'top down' approach (*e.g.*, financial statements to per-unit cost), starting with cost of sales from the financial statements and proceeding step-by-step down through cost of manufacturing for the reporting period to the summation of the reported per-unit costs." J.A. 162. In September 2020, Corinth submitted its initial questionnaire response. J.A. 3376–483.

## B. First Supplemental Questionnaire

In May 2021, citing deficiencies in Corinth's initial questionnaire response, Commerce issued a first supplemental questionnaire. J.A. 3929–38. Commerce explained that the reconciliation worksheet in Corinth's response to the initial questionnaire failed to show the cost of manufacture for the period of review or "tie to the cost reported in" Corinth's cost accounting system. J.A. 3933. Commerce requested that Corinth "provide worksheets" in a specified format that "reconcil[ed] the total" cost of manufacture for the period of review "to the total per-unit manufacturing costs submitted to Commerce." *Id.* Commerce also requested that Corinth "[i]dentify and quantify" and "explain" various "reconciling items." J.A. 3933–34.

In June 2021, Corinth submitted its response to the supplemental questionnaire. J.A. 4242–43, 4249–50, 5949, 5955–68, 5973–76. Corinth explained that it "cannot generate a single [cost of manufacture] report from its system" because this "would double or triple count costs when the product passed through multiple production phases." J.A. 4243.

### C. Second Supplemental Questionnaire

Finding deficiencies in Corinth's first supplemental questionnaire response, Commerce issued a second supplemental questionnaire in July 2021. J.A. 6493–97. Commerce explained that Corinth's first supplemental response had "extensive calculation worksheets and reconciliation" data that were "difficult to interpret because of the lack of adequate descriptions as to the methodology used." J.A. 6496. Commerce requested that Corinth explain why it was "necessary to include" reported costs for months outside the period of review and why the company was "unable to generate a single" cost of manufacture report from its system. J.A. 6495–96 (quotations omitted). Commerce also requested that Corinth describe steps taken to explain how specific information "supports your overall reconciliation," explain particular "lines of data," and define certain terms. J.A. 6496.

In July 2021, Corinth submitted its second supplemental questionnaire response. J.A. 6976, 6986–93, 6996–99, 7004–05, 7027–36. Corinth explained that "a single [cost of manufacture] report from its system" would "double or triple count costs when the product passed through multiple production phases" because "the accumulation of costs at each stage of production would lead to double counting." J.A. 6986–97. Corinth also explained that it had to submit separate reconciliations because it "cannot extract from" its cost accounting system "a costing report that combines years." J.A. 6997. Corinth submitted a version of its reconciliation data for 2019, with annotations purporting to provide "a road map for the worksheets and source data contained" therein. J.A. 6998 (quotations omitted).

### D. Preliminary and Final Results

At the end of July 2021, Commerce issued its Preliminary Results. *Large Diameter Welded Pipe from Greece*, 86 Fed. Reg. 43172 (Dep't of Commerce Aug. 6, 2021)

("*Preliminary Results*").  Commerce relied on Corinth's submitted information to conduct a less than fair value analysis,[1] comparing the export price of Corinth's U.S. sales made during the period of review to the normal value that was based on constructed value.[2]  *See generally Decision Memorandum for the Preliminary Results of the 2019–2020 Administrative Review of the Antidumping Duty Order on Large Diameter Welded Pipe from Greece*, 86 ITADOC 43172 (Dep't of Commerce Aug. 6, 2021) ("*Preliminary Decision Memorandum*"), J.A. 8180–93.  From this analysis, Commerce determined that U.S. sales of the imported pipe had "not been made at prices less than normal value." *Id.*

---

[1]    Generally, an antidumping duty is "equal to the amount by which the normal value exceeds the export price (or the constructed export price) for the merchandise" subject to the investigation.  19 U.S.C. § 1673.  The "normal value" is "the price at which the foreign like product is first sold (or, in the absence of a sale, offered for sale) for consumption in" either (1) "the exporting country, in the usual commercial quantities and in the ordinary course of trade and, to the extent practicable, at the same level of trade as the export price or constructed export price"; or (2) under certain conditions, "a country other than the exporting country of the United States." *Id.* § 1677b(a)(1)(B).

[2]    If the normal value in the exporting country cannot be determined, then the normal value "may be the constructed value." 19 U.S.C. § 1677b(a)(4).  The "constructed value" is partly based on the sum of "the cost of materials and of fabrication or other processing of any kind employed in producing the merchandise," and, with some exceptions, "the actual amounts incurred and realized by the specific exporter or producer being examined in the investigation or review for selling, general, and administrative expenses, and for profits, in connection with the production and sale of a foreign like product, in the ordinary course of trade, for consumption in the foreign country." *Id.* § 1677b(e)(1)–(2).

at J.A. 8180. Commerce "preliminarily determine[d]" that Corinth's estimated weighted-average dumping margin was 0%. *Preliminary Results*, 86 Fed. Reg. at 43173. Significantly, Commerce noted that it received Corinth's response to the second supplemental questionnaire shortly before the Preliminary Results, and that it intended to consider the response for purposes of the final determination. *Preliminary Decision Memorandum*, J.A. 8181.

In February 2022, Commerce issued its final determination in the review. *Large Diameter Welded Pipe from Greece*, 87 Fed. Reg. 7120 (Dep't of Commerce Feb. 8, 2022) ("*Final Results*"). According to Commerce, it "attempted to piece together a meaningful reconciliation" from the "voluminous worksheets, datafiles, and report downloads submitted by Corinth" in the various questionnaire responses, in order to "determine whether Commerce could rely on Corinth's submitted cost information." *Decision Memorandum for the Final Results of the 2019–2020 Administrative Review of the Antidumping Duty Order on Large Diameter Welded Carbon and Alloy Steel Line Pipe from Greece*, 87 ITADOC 7120 (Dep't of Commerce Feb. 2, 2022) ("*Final Decision Memorandum*"), J.A. 8993–9014, at J.A. 9006. Commerce determined that it could not rely on Corinth's submitted cost data and information.

Commerce explained that it encountered deficiencies in each of Corinth's three questionnaire responses. In Corinth's initial questionnaire response, Commerce found at least three deficiencies. The response (1) "did not reconcile the expenses per [Corinth's] audited income statement to [Corinth's] extended cost database"; (2) "relied on amounts that included the counting of product costs at both the semifinished stage and the finished product stage, resulting in 'double counted' costs from intermediate stages, thus grossly over inflating the figures"; and (3) "failed to provide Commerce with one complete reconciliation, as requested, providing instead two separate reconciliations for different parts of the" period of review. *Id.* at J.A. 9004. On the

third deficiency, Commerce found that one reconciliation "relied on the 2019 fiscal year and failed to exclude the portion of the year that fell outside of the" period of review from April 19, 2019 through April 30, 2020, while the other reconciliation only covered "the first four months of 2020." *Id.* Based on these findings, Commerce concluded that the two submitted reconciliations "did not show the total extended" cost of manufacture for the period of review from Corinth's cost of production data. *Id.*

In Corinth's first supplemental questionnaire response, Commerce found that "Corinth again provided two separate incomplete reconciliations, one for fiscal year 2019 and one for the first 4 months of 2020 instead of one overall reconciliation," as was requested. *Id.* at J.A. 9005. Accordingly, the 2019 reconciliation "failed to exclude the first quarter 2019 costs and, thus, did not show a financial statement" cost of manufacture for the period of review. *Id.* Commerce also found that the two partial reconciliations failed to include actual costs for other items. *Id.*

In Corinth's second supplemental questionnaire response, Commerce identified four deficiencies: (1) Corinth again "failed to provide a proper cutoff of accounting periods and one complete [period of review] cost reconciliation worksheet"; (2) if the two accounting periods were properly cut off and excess costs removed, total cost of manufacture would "still include 'double counted' costs" in the submitted cost of production / constructed value file from Corinth's cost accounting system; (3) after excluding the double counted costs, "the amounts contained in the [cost of production / constructed value] file include costs and quantities that are not in accordance with" Corinth's audited financial statements; and (4) there were "significant differences in materials and conversion costs" between the audited financial statements and cost accounting system data. *Cost of Production and Constructed Value Calculation Adjustments for the Final Results—Corinth Pipeworks*

*Pipe Industry S.A.* (Dep't of Commerce Feb. 2, 2022) ("*Final Results Calculation Memorandum*"), J.A. 9015–22, at J.A. 9016–18.

Based on these deficiencies, Commerce made three determinations central to this appeal. First, Commerce determined to resort to "facts otherwise available," pursuant to 19 U.S.C. § 1677e(a)(2). *Final Decision Memorandum*, J.A. 8996. Commerce determined that "Corinth failed to provide the necessary cost reconciliation in the form and manner requested" under § 1677e(a)(2)(B). *Id.* Thus, Commerce determined that Corinth "withheld requested information necessary to demonstrate that all costs were either appropriately included or excluded from the reported cost database" under § 1677e(a)(2)(A). *Id.* As a result, Corinth "significantly impeded the proceeding because reconciling items were unidentified and unsupported by the record" under § 1677e(a)(2)(C). *Id.*[3] Commerce concluded that the information Corinth provided was "too incomplete to serve as a reliable basis for reaching a determination," because Corinth's submissions provided Commerce "no reliable cost of production [] information," which is "vital" to its analysis. *Id.* at J.A. 8997, 9002–07.

———————————

[3]   Additionally, Commerce noted that it was not required to consider Corinth's ability to submit the information in the requested form and manner under 19 U.S.C. § 1677m(c)(1), because Corinth did not "notify Commerce that it was unable to submit the information in the form and manner requested," instead submitting "a voluminous dump of different reports, worksheets, and tables, resulting in an incomplete reconciliation." *Final Decision Memorandum*, J.A. 8996. Commerce also determined that it was not required to consider Corinth's submitted information under 19 U.S.C. § 1677m(e), because Corinth's deficient submissions met none of the requirements enumerated at that subsection. *Id.*

Second, Commerce decided to use an "adverse infer-ence," as provided under 19 U.S.C. § 1677e(b), because Cor-inth had "not act[ed] to the best of its ability to comply with" Commerce's requests for information. *Id.* at J.A. 8998–99.

Third, as an adverse inference, Commerce determined to apply total adverse facts available ("AFA") in the form of "the highest dumping margin alleged in the petition" sub-mitted in the underlying antidumping duty investiga-tion: 41.04% *ad valorem*. J.A. 8999–9001.

### III. Trade Court

Corinth filed an appeal before the United States Court of International Trade ("Trade Court") challenging Com-merce's Final Results. In September 2022, Corinth moved for judgment on the agency record pursuant to Rule 56.2 of the Rules of the Trade Court. J.A. 9107, 9112–55, 9157–281. Corinth argued that Commerce's decision to ap-ply total AFA was unreasonable for three reasons. First, Commerce failed to provide an opportunity to comment on a change in methodology under 19 U.S.C. § 1677m(g). J.A. 9117–24. Second, Commerce erroneously rejected Corinth's cost data and applied total AFA in violation of § 1677e(a), and erroneously drew an adverse inference un-der § 1677e(b)(1). J.A. 9124–51, 9153–55. And, third, the AFA rate selected by Commerce was unreasonable and un-supported by substantial evidence. J.A. 9151–53.

In April 2023, the Trade Court sustained the Final Re-sults. The Trade Court found that Commerce was not ob-ligated to provide an opportunity to comment under § 1677m(g), because Commerce neither obtained any "new information" nor unreasonably changed its methodology. *Trade Court Decision*, 633 F. Supp. 3d at 1320–23. Addi-tionally, the Trade Court found that Commerce's determi-nation to resort to total AFA, based on § 1677e(a) and (b)(1), was reasonable and supported by substantial evidence due to Corinth's failure to submit, in the form and

manner requested, the information necessary for cost reconciliation. *Id.* at 1323–28. Finally, the Trade Court ruled that Commerce's selection of the AFA rate was reasonable and supported by substantial evidence. *Id.* at 1328–29.

Corinth appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

## STANDARD OF REVIEW

We review de novo the Trade Court's judgments concerning final antidumping duty determinations. *Union Steel v. United States*, 713 F.3d 1101, 1106 (Fed. Cir. 2013). In doing so, we "step[] into [the] shoes" of the Trade Court and "apply[] the same standard of review" applied by the Trade Court in its review of Commerce's determinations. *JTEKT Corp. v. United States*, 642 F.3d 1378, 1381 (Fed. Cir. 2011). We will uphold Commerce's determinations unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i); *see Union Steel*, 713 F.3d at 1106; *Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1341 (Fed. Cir. 2016).

When reviewing Commerce's findings for substantial evidence, "[w]e look to the record as a whole, including evidence that supports as well as evidence that fairly detracts from the substantiality of the evidence." *Changzhou Trina Solar Energy Co. v. United States,* 975 F.3d 1318, 1326 (Fed. Cir. 2020). "Substantial evidence on the record means more than a mere scintilla and such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984) (quotation omitted). In reviewing whether an action by Commerce is supported by substantial evidence, we review whether the action was reasonable based on the agency record as a whole. *Changzhou Trina,* 975 F.3d at 1326; *see* 19 U.S.C. § 1516a(b)(1)(B)(i).

DISCUSSION

Corinth's principal argument on appeal is that Commerce erred when it resorted to total AFA on grounds that Corinth failed to cooperate to the best of its ability. Corinth also claims that Commerce failed to provide an opportunity to comment.[4] The United States and the intervenor, American Line Pipe Producers Association Trade Committee, counter that Commerce's determinations reached in the Final Results are supported by substantial evidence and otherwise not contrary to law.

## I. Adverse Facts Available

Section 1677e requires that Commerce use facts otherwise available if, in relevant part, "an interested party or any other person": (A) withholds information requested by Commerce; (B) fails to provide such information by the deadlines for submission of the information or in the form and manner requested, subject to subsections (c)(1) and (e) of § 1677m; (C) significantly impedes a proceeding; or (D) provides such information but the information cannot be verified in § 1677m(i). 19 U.S.C. § 1677e(a)(2). Moreover, if Commerce finds that the party "has failed to cooperate by not acting to the best of its ability to comply with a request for information," Commerce "may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available[.]" *Id.* § 1677e(b)(1)(A).

### A. Facts Otherwise Available

Corinth argues that Commerce's determination to use "facts otherwise available" is unreasonable and unsupported by substantial evidence. Appellant Br. 33–34.

---

[4] Corinth does not appeal the Trade Court's determination that Commerce selected a reasonable AFA rate. We therefore do not reach that issue.

Specifically, Corinth asserts that it did not withhold information or impede the proceeding under § 1677e(a)(2)(A) or (C), because it submitted a complete cost reconciliation. Appellant Br. 34–40. We disagree. Commerce determined, on three occasions, that Corinth failed to provide costs that reconciled. *See* Background Section II.B–D. Corinth was thus aware of the deficiencies. In the Final Results, Commerce reviewed in detail the numerous deficiencies in the reconciliation data in Corinth's first two responses and described the continuation of these deficiencies in the third response. *See* Background Section II.D. Commerce sifted through Corinth's "voluminous dump of reports, worksheets, and tables." *Final Decision Memorandum*, J.A. 8996. Commerce determined that Corinth's submitted reconciliation included months outside the period of review, double counted costs, and contained amounts that differed significantly from costs in Corinth's audited financial statements. *Final Results Calculation Memorandum*, J.A. 9016–18. Commerce thus concluded that Corinth's data did not reconcile and that Corinth had thereby withheld requested information (i.e., a complete reconciliation) under § 1677e(a)(2)(A) and thereby significantly impeded the proceeding under § 1677e(a)(2)(C). *Final Decision Memorandum*, J.A. 9002. These determinations are supported by substantial evidence.

Corinth asserts that Commerce "mistakenly characterized" certain costs associated with the production of semi-finished pipe as "double counted" in Corinth's submitted data and then "twice deduct[ed]" those costs. Appellant Br. 34–40 (citing annotations "q" and "u" in *Final Results Calculation Memorandum*, J.A. 9019–20). We disagree. Corinth was required to provide a complete reconciliation in the first place. The burden was on Corinth to "creat[e] an adequate record" that could reconcile costs and to explain how the data showed the costs reconciled. *See Nan Ya*, 810 F.3d at 1337–38 (citation and quotations omitted). But Corinth failed to do so. As a result, Commerce

reasonably determined that Corinth failed to produce an adequate record, because "[m]erely providing a bulk of information does not constitute a response to inquiries requesting that [Corinth] clearly explain how its submitted cost data reconcile to [Corinth's] audited financial statement" on cost of manufacture. *Final Decision Memorandum*, J.A. 9003.

Corinth asserts that Commerce's determination that Corinth failed to provide information in the requested form and manner under § 1677e(a)(2)(B) is unsupported by substantial evidence. Appellant Br. 40–41. But Corinth did not make this argument before the Trade Court. In its briefs before the Trade Court, Corinth admitted that it "provided an alternate to Commerce's preferred reconciliation structure." J.A. 9129. The Trade Court explained that Corinth "concede[d]" that its cost reconciliation was not submitted in the requested form and manner. *Trade Court Decision*, 633 F. Supp. 3d at 1324. This court has held that a party waives an argument not presented in its opening brief filed with the Trade Court. *Novosteel SA v. U.S., Bethlehem Steel Corp.*, 284 F.3d 1261, 1273 (Fed. Cir. 2002) (addressing a party's failure to "present[]" its argument "in the principal summary judgment brief"). Because Corinth did not raise this argument before the Trade Court, we deem it waived.

Lastly, Corinth claims that Commerce legally erred by failing to notify Corinth about deficiencies in its submitted reconciliation, as required under 19 U.S.C. § 1677m(d). Appellant Br. 47–53. Section 1677m(d) requires that, if "a response to a request for information under this subtitle does not comply with the request," Commerce "shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency[.]" 19 U.S.C. § 1677m(d). Corinth, however, did not argue before the Trade Court that Commerce was required to provide notice under § 1677m(d).

The Trade Court went as far as to point out that Corinth could have made this argument but did not. *Trade Court Decision*, 633 F. Supp. 3d at 1323 n.7. We, therefore, find the argument waived. *See Novosteel*, 284 F.3d at 1273.[5]

### B. Adverse Inference

In the alternative, Corinth asserts that, assuming Commerce is correct that Corinth did not provide the requested information, Commerce erred in using an adverse inference, because Corinth "cooperate[d] to the best of its ability" under § 1677e(b). Appellant Br. 56 (quoting *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003)) (quotations omitted). We are not persuaded.

Generally, "the statutory mandate that a respondent act to 'the best of its ability' [under § 1677e(b)] requires the respondent to do the maximum it is able to do." *Nippon Steel Corp.*, 337 F.3d at 1382. We recognize that § 1677e(b) "does not require perfection" and that "mistakes sometimes occur." *Id.* On the other hand, the statute "does not condone inattentiveness, carelessness, or inadequate record keeping." *Id.* This standard

> assumes that importers are familiar with the rules and regulations that apply to the import activities undertaken and requires that importers, to avoid a risk of an adverse inference determination in responding to Commerce's inquiries: (a) take reasonable steps to keep and maintain full and complete records documenting the information that a reasonable importer should anticipate being called upon to produce; (b) have familiarity with all of the

---

[5] The record shows that Commerce provided Corinth with multiple "opportunities to remedy or explain the deficiencies in the cost reconciliation." *Final Decision Memorandum*, J.A. 8996; *see* Background Section II.B–D.

    records it maintains in its possession, custody, or
control; and (c) conduct prompt, careful, and com-
prehensive investigations of all relevant records
that refer or relate to the imports in question to the
full extent of the importers' ability to do so.

*Id.* Congress intended for the adverse inference provision
"to ensure that the [non-cooperating] party does not obtain
a more favorable result by failing to cooperate than if it had
cooperated fully." Statement of Administrative Action on
the Uruguay Round Agreements Act, 108 Stat. 4809
(Dec. 8, 1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4199
("SAA").[6]

    Commerce determined that Corinth did not cooperate
to the best of its ability to remedy the multiple deficiencies
in its submitted reconciliation. *Final Decision Memoran-
dum*, J.A. 9005–06. Commerce recognized that due to con-
straints in Corinth's cost accounting system, "Corinth may
not have been able to generate a cost report for a period
that spans two fiscal years," like the period of review here.
*Id.* at J.A. 9005. Nonetheless, Commerce determined that
"Corinth admits that it can extract" from its accounting
system a "costing report for a range of months in the same
year." *Id.* Thus, Commerce determined that Corinth
"could have generated data for the last nine months of 2019
as it did for the first four months of 2020," thereby "re-
mov[ing] the three months of 2019 costs incurred prior to
the" period of review. *Id.* Corinth's failure to do so,

---

    [6] The SAA "shall be regarded as an authoritative ex-
pression by the United States concerning the interpreta-
tion and application of the Uruguay Round Agreements
and this Act in any judicial proceeding in which a question
arises concerning such interpretation or applica-
tion." 19 U.S.C. § 3512(d).

Commerce determined, is indicative of a failure to act to the best of its ability. *Id.* at J.A. 9005–07. We agree.

The record reflects substantial evidence supporting Commerce's determination that Corinth failed to act to the best of its ability to remedy the deficiencies in its submitted reconciliation. *See id.* at J.A. 9005. Corinth contends that it "'put forth its maximum effort' when it explained that it was necessary to submit two reconciliations as its financial statements correspond to the calendar year." Appellant Reply Br. 27 (quoting *Nippon Steel*, 337 F.3d at 1382). But, as described above, Commerce relied on Corinth's own submissions to determine that Corinth could have worked around the constraints in its accounting system. *Final Decision Memorandum*, J.A. 9005. On this basis, Commerce reasonably determined that Corinth had not "put forth its maximum effort to provide Commerce with full and complete answers." *Id.* at J.A. 8998. Commerce therefore was justified in its use of an adverse inference to apply total AFA.

Corinth contends that it "had no reason to alert Commerce of any difficulties when it *presumed* that it was following Commerce's instructions." Appellant Reply Br. 26 (emphasis added). We are not persuaded. Corinth asks us to turn a blind eye to the record evidence. Commerce's questionnaires repeatedly requested that Corinth remedy deficiencies in its responses. *See* Background Section II.B–D. At minimum, Corinth could have notified Commerce under 19 U.S.C. § 1677m(c) that it would be "unable" to do so. *See id.*[7]

_____

[7] Corinth alerted Commerce that its cost accounting system was unable to combine multiple years. J.A. 6997. But this was not a notification that, as a general matter, Corinth was unable to remedy the identified deficiencies.

Corinth asserts that Commerce's determination to apply an adverse inference as total AFA under § 1677e(b) was error because there was other information Commerce could have used to make a neutral inference or apply partial AFA. Appellant Br. 55–58. According to Corinth, Commerce could have used information on the record to fill purportedly "small gaps" that Commerce identified between Corinth's audited financial statements and its reported costs. *Id.*

But Commerce is not obligated in every case to fill gaps in a respondent's questionnaire response using partial AFA. This is particularly true where the missing or deficient information concerns core data, such as cost reconciliation data. Corinth relies on *Zhejiang DunAn Hetian Metal Co. v. United States*, but, in that case, we required Commerce to fill a "gap in the record" where Commerce could have calculated the dumping margin "without that missing information." 652 F.3d 1333, 1345–48 (Fed. Cir. 2011). In this case, Commerce encountered more than mere "small gaps" in Corinth's responses. As Commerce noted, "a proper reconciliation is a *significant* part of a cost response," and a "*major point* of the reconciliation is to establish that the reported unit costs and production quantities square with the financial accounting system, the cost accounting system, and the production records." *Final Decision Memorandum*, J.A. 9002–03 (emphases added). Because such data are core to Commerce's cost review, Commerce reasonably determined that Corinth's failure to provide the requested information in the required form "significantly impede[d] this review." *Id.* Commerce reasonably determined that there existed a "*large*

---

*See Final Decision Memorandum*, J.A. 9005 (noting Corinth's "admi[ssion] that it can extract" from its accounting system a "costing report for a range of months in the same year").

unreconciled difference between Corinth's audited financial statement [cost of manufacturing] and its reported costs" based on Corinth's "voluminous and complex" data files and worksheets. *Id.* at J.A. 8999 (emphasis added), 9003. That record information is substantial evidence supporting Commerce's actions concerning use of an adverse inference as total AFA.

Based on the foregoing reasons, we hold that Commerce's determination to resort to total AFA including an adverse inference to establish Corinth's dumping margin was reasonable, supported by substantial evidence, and otherwise not contrary to law.

## II. Opportunity to Comment

Corinth argues that Commerce improperly failed to provide it with an opportunity to comment "on information serving as the basis for Commerce's determination to apply AFA." Appellant Br. 18.

19 U.S.C. § 1677m(g) provides that that information that is timely submitted to Commerce during a proceeding shall be subject to comment by other parties to the proceeding within a reasonable time. 19 U.S.C. § 1677m(g). The statute provides that "before making a final determination," Commerce "shall cease collecting information and shall provide the parties with a final opportunity to comment on the information obtained by" Commerce "upon which the parties have not previously had an opportunity to comment. Comments containing new factual information shall be disregarded." *Id.*

Corinth asserts that Commerce contravened § 1677m(g) by failing to provide an opportunity to comment on the *analysis* that Commerce used in the Final Results that led to the conclusion that Corinth's "reported costs did not reconcile with its financial accounting system." Appellant Br. 18. According to Corinth, Commerce's analysis

constituted "information" requiring an opportunity to comment under § 1677m(g). *Id.* at 20–26. We disagree.

We have explained that § 1677m(g) requires that Commerce provide an opportunity to comment on "all information timely filed *by interested parties*." *QVD Food Co. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011) (emphasis added). The Trade Court has similarly maintained that information requiring an opportunity to comment under § 1677m(g) is information that Commerce "collects or obtains externally," not Commerce's internal findings or interpretations of facts. *Tri-Union Frozen Prods., Inc. v. United States*, 163 F. Supp. 3d 1255, 1289 (Ct. Int'l Trade 2016). We note that Corinth is the only party in the review, so there are no other party submissions on which Corinth was entitled to comment. Nor were Commerce's internal findings or interpretations of facts "information" received from an external source. As such, we conclude that Corinth's own submissions were not "information" triggering an entitlement to an opportunity to comment under § 1677m(g).

Similarly, Corinth argues that it was improperly denied an opportunity to comment on Commerce's change in methodology made after the Preliminary Results. Appellant Br. 20–26. According to Corinth, Commerce initially relied on its submitted information, resulting in a dumping margin of 0% in the Preliminary Results. *Id.* at 21. Corinth asserts that Commerce then changed its methodology, leading to an application of total AFA with an adverse inference in the form of the highest dumping margin alleged in the petition of 41.04% *ad valorem*. *Id.* This argument is without merit. We have determined that Commerce is not bound by its preliminary determinations, which "are 'preliminary' precisely because they are subject to change." *NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1208 (Fed. Cir. 1995). We see no reason to bind Commerce to its Preliminary Results in this case.

We also find unpersuasive Corinth's citation to various cases in support of its argument that it was entitled to an opportunity to comment based on a change in methodology. *See* Appellant Br. 20–21 (discussing *Koyo Seiko Co., Ltd. v. United States*, 516 F. Supp. 2d 1323 (Ct. Int'l Trade 2007), and *Shikoku Chems. Corp. v. United States*, 795 F. Supp. 417 (Ct. Int'l Trade 1992)). The cases Corinth relies on address similar issues to *SKF USA, Inc. v. United States*, 537 F.3d 1373, 1381 (Fed. Cir. 2008), where this court examined whether a party should be entitled to submit comments where there has been a change in methodology *and* an allegation of detrimental reliance. Here, there is neither. Commerce simply altered its procedural path when it determined that it was necessary under the statute to resort to total AFA given Corinth's failure to provide useable and reliable information and data. In addition, Corinth has not established, as it claims, that it assumed Commerce would maintain the same analysis from the Preliminary to Final Results. *See* Background Section II.D. Nor has Corinth presented any evidence that it relied to its detriment on such an assumption. Thus, there is no basis for Corinth's argument that it was entitled to an opportunity to comment on a change in methodology.

For the foregoing reasons, we conclude that Commerce did not contravene § 1677m(g).

## CONCLUSION

We have considered Corinth's remaining arguments and find them unpersuasive. Accordingly, for the foregoing reasons, we affirm the judgment by the Trade Court sustaining Commerce's Final Results.

## AFFIRMED

### COSTS

Costs against Corinth.